[Filed March 19, 1888.]

JOSEPH HOLLADAY, APPELLANT, v. ESTHER HOLLADAY, RESPONDENT.

AN EXECUTOR IS a person to whom the decedent has confided the execution of his last will, and he derives his appointment from it. Letters testamentary issued by the probate judge are but the authentic evidences of the power conferred by the will, and are founded upon the probate of that instrument.

EXECUTOR, ELIGIBILITY OF. — At common law, all persons capable of making wills, and some others besides, are capable of being made executors, and from the earliest time, it has been the rule that every person may be an executor, saving such as are expressly forbidden. Our Code has disqualified many persons, who, at common law, were competent to serve as executors, the tendency of modern

legislation being to enlarge the control of Probate Courts in respect to testa-
mentary appointments; but the principle by which the court is to be guided in
determining to whom letters testamentary are to be issued remains unchanged.

WILLS—LETTERS TESTAMENTARY.—As at common law, so under the statute, all
persons not expressly forbidden may serve as executors, and when one or more
are so appointed by the testator, the court must give heed to his choice, and
issue the necessary letters to enable such representative to perform his trust. It
was therefore *held*, that when a will is proven, it is the plain duty of the court
to grant letters testamentary to the person named in the will, upon his applica-
tion, who is not disqualified by the statute.

APPEAL from Multnomah County.

*R. & E. B. Williams*, for Appellant.

*McDougall & Tanner*, for Respondent.

LORD, C. J.—This is styled a protest to the appointment of
the plaintiff as executor of the last will and testament of Ben
Holladay, deceased. On the eighth day of July, 1887, Ben
Holladay died at Portland, Oregon, leaving a will dated Sep-
tember 5, 1875, in which the plaintiff was named as one of the
executors. As to the other executors named, one being dead
and the other a non-resident, the plaintiff was the only executor
entitled to apply for letters to administer the estate in pursuance
of the will. After the will was admitted to probate, this protest
or proceeding was brought to prevent the issuing of letters testa-
mentary to the plaintiff, and as it affirmatively appeared that
none of the objections raised come within section 1108 of the
Code, the court ruled adversely to the defendant, and upon
appeal to the Circuit Court this decision was reversed. From
the said judgment of the Circuit Court the plaintiff brings this
appeal. The only question to be determined is as to the quali-
fications of Joseph Holladay to act as such executor.

Section 1084 of Hill's Code provides as follows: "When a
will is proven, letters testamentary shall be issued to the persons
named therein as executors, or to such of them as give notice of
their trust and are qualified," etc.; and section 1108 prescribes
that "the following persons are not qualified to act as executors
or administrators, non-residents of this State, minors, judicial
officers, other than justices of the peace, persons of unsound
mind, or who has been convicted of any felony, or of a misde-

meanor involving moral turpitude, or a married woman." The first section indicates that it was the legislative intention to respect the choice of the testator in the appointment of an executor to carry into effect his last will, and that the two sections considered *in pari materia* authorize the appointment of any and all persons as executors, except such as are expressly disqualified or forbidden by the last section cited.

As the contention of counsel for the defendant controverts this construction, and insists that the court is invested with a large discretionary power, in the exercise of which it may refuse letters testamentary to an executor, although not liable to any statutory disqualification, who, for any reason in the judgment of the court may be unfit or unsuitable for the performance of the trust, it is well to note what the common law was before the existence of these statutory provisions in order to ascertain the extent of the change effected by them.

An executor is a person to whom the deceased has confided the execution of his last will. He derives his appointment from the will, and upon it his authority is grounded. The letters issued to him by the probate judge "are but the authentic evidences of the power conferred by the will, and are founded upon the probate of that instrument." (*Hartnell* v. *Wandall,* 60 N. Y. 350.) Although he may not act, except in a few particulars, until the will is probated and letters testamentary issued, yet this fact does not affect the efficiency of the will as the source of power.

When not contrary to law, the right to make a will and to appoint the person to carry it into effect has long been esteemed an invaluable right, and one not to be disregarded. At common law, such was the respect in which the wishes of the testator was held in the appointment of an executor to stand in his place and settle his estate, that the principle was sometimes carried to the extent of appointing persons obviously unsuitable to exercise the trust. (Schouler on Executors and Administrators, § 33.) Unless specially disqualified, all persons may be made executors, and few or none are disabled or incapacitated to act as such on account of their crimes.

"Generally speaking," says Mr. Williams, "all persons capable of making wills, and some others besides, are capable of being made executors, and that from the earliest times it has been a rule that every person may be an executor, saving such as are expressly forbidden." (Williams on Executors, 268.) Hence immorality or habitual drunkenness did not disqualify, nor those attainted or outlawed for political offenses, or convicted of crime; and that "the spiritual court cannot refuse to grant the probate of a will to a person appointed executor on account of his poverty or insolvency." (Williams on Executors, 295; Redfield on Wills, 69, et seq.; Schouler on Executors and Administrators, § 33, et seq.) So that in the absence of statute, we find that aliens, minors, married women, criminals, immoral persons, habitual drunkards, insolvents, and other obviously unsuitable persons were not disqualified by the English law, and that the rule was, as already stated, that all persons may serve as executors, except such as are expressly forbidden.

In *Berry* v. *Hamilton*, 12 Mon. B. 191, the court say: "An executor derives his office from testamentary appointment; and if he be a man, not prohibited by law from being an executor, the County Courts have no rights to refuse his qualification;" and again, "it is sufficient for us to say that the law has declared who may and who may not be an executor, and if Berry be a man whom the law allows to be appointed as such, it follows that upon his motion to give bond and qualify under the will, it was the duty of the County Court, if the security was sufficient to permit him to give bonds and be qualified as executor, and to grant to him letters testamentary."

The common law forbids the appointment of an idiot, or lunatic, or insane person, for these disabilities not only render them incapable of performing the duties of such a trust, but their want of understanding likewise rendered them incapable of determining whether or not they would accept the trust. These references are sufficient to show how few are disqualified to act as executor at common law, and how strictly the wishes of the testator were regarded and enforced in his appointment of a representative to manage and control his estate after death.

In fact, there seems to have been no discretion left to the court in the matter; if the person named as executor did not come within the inhibited class, the court had no right to refuse his application. Now the change effected by the provisions of our Code already referred to is that very many persons who, at common law, were competent to serve as executors have been expressly disqualified, so that the prohibited class is quite materially increased, and the power of the court in respect thereto proportionally enlarged for the purpose of enforcing their exclusion. The tendency of modern legislation has been to enlarge the control of probate courts in respect to testamentary appointments. In some of the States, notably New York, California, Massachusetts, and Wisconsin, the disqualifications of an executor are prescribed with great minuteness, and include drunkenness, dishonesty, improvidence, and other causes of unsuitableness. But the principle by which the court is to be guided in determining to whom letters testamentary are to be issued remains unchanged. As at common law, so under the statute, all persons not expressly forbidden may serve as executors, and when one or more are so appointed by the testator, the court must give heed to his choice, and issue the necessary letters to enable his representative to perform his trust.

When a will is proven, its plain duty is to grant letters to the person named in the will, upon his application, who is not disqualified by the statute. All persons are qualified and competent to serve who are not disqualified, and when nominated in the will entitled to have the letters testamentary issued to them. This is not only the plain construction of the provisions cited, but it comports with the rule that prevailed at common law to respect the wishes of the testator, and to grant letters to those named competent to serve as executor. It is admitted that the plaintiff is not disqualified, or does not fall within one or the other of the exceptions of the statute. He must then be qualified and entitled to the letters, and if so, what right has the court to deny his application, overturn the choice of the testator, and disappoint his wishes. In such case, the point at issue is the qualification of the person named as executor, and the court

must look to the law as the source of its power, and yield obedience to it.

Said Johnson, J.: "The statute makes it the duty of the surrogate, when any will or personal estate shall have been admitted to probate, to issue letters testamentary thereon to the persons named therein as executors, if they are by law competent to serve as such. It then provides who shall be deemed incompetent to serve as an executor. I am of the opinion that any person appointed or named as an executor in a will is to be deemed competent, unless he is declared incompetent by the statute; and that it is the duty of the surrogate to grant letters to every person named as executor in a will upon his application, who is not declared incompetent to serve by statute. He has no discretion to exercise in the matter, but must obey the requirements of the statute, which is the sole source of his power. To allow surrogates to invent new causes of disqualification, and to add to those prescribed by statute, would be conferring worse and dangerous powers upon these officers of special and limited jurisdiction. *But in any view of the case, the respondent was clearly competent to serve as executor, and having applied for letters in pursuance of his appointment by the will, the surrogate has no right to refuse them.*" (*McGregor* v. *McGregor,* 33 How. Pr. 456; Willard on Executors and Surrogates, 134.)

It may be true, that the power to remove an executor for failing to perform his duties, or other sufficient cause, in the absence of statute regulation, inheres in the court, or that the court in such case is not always confined strictly to the cases enumerated in the statutes, when the exercise of such power is essential to prevent a failure of justice, and may be regarded as incidental to the office or court. What may be the extent of judicial discretion in such cases, or whether the court is confined entirely to the powers specially granted, and cannot remove an executor for any other cause than those prescribed by the statute, is not before us, nor do we decide. What we hold is, that the plaintiff being the person named in the will as executor, and qualified to serve, it was the duty of the court, upon his application, to grant him letters testamentary.

The judgment of the Circuit Court must be reversed, and the cause remanded for such further proceedings, as may be proper in accordance with this opinion.