JAMES McCORMICK, Respondent, *v.* THE CATHOLIC RELIEF AND BENEFICIARY ASSOCIATION, Appellant.

*Life insurance policy — alleged false statement by the insured that he was unmarried — waiver, by the insurer accepting an assessment upon the policy after the liability was denied and by a general assessment levied to pay the claim pending a suit to enforce it — what evidence as to a false answer must be submitted to the jury.*

Evidence that, after a mutual relief association had denied liability upon a life insurance policy issued by it, upon the ground that the insured had falsely stated in the application that he was not married, the officers of the association, after the death of the insured, accepted payment of an assessment levied upon the policy before the death of the insured; that in the month succeeding the death of the insured the association accepted proofs of his death, sworn to before its president, and that more than six months after an action to recover upon the policy had been commenced, and after the association had served a verified answer setting up the alleged false statement, it levied and collected an assessment upon its members to pay the claim arising on the policy, is sufficient in such action to raise a question for the jury whether the association had not waived its right to insist upon a forfeiture by reason of the alleged false statement.

Evidence as to the insured having answered, in the application for the insurance, falsely, that he was not married, which requires the submission of that question to the jury, considered.

APPEAL by the defendant, The Catholic Relief and Beneficiary Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cayuga on the 13th day of May, 1898, upon the verdict of a jury, and also from an order bearing date the 12th day of May, 1898, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

The action was commenced on the 19th day of July, 1897, to recover the sum of $1,000 upon a certificate or policy of insurance issued by the defendant upon the life of one Thomas J. Appleby, in which certificate or policy the plaintiff was designated as the beneficiary.

The certificate was dated on the 5th day of April, 1895, and provided, in substance, that in case the statements made by the insured in his application and in the medical examiner's report (all of which statements were made warranties) were true, and in case the insured

complied with all the conditions and provisions of the constitution and by-laws of the defendant then existing, or that might thereafter be adopted, then, upon the death of the insured, the beneficiary would be entitled to receive "a sum equal to the amount received from the death assessment last preceding the approval of such proofs (of death), not exceeding, however, one thousand dollars."

It was conceded upon the trial that the amount realized upon said "assessment last preceding" was sufficient to pay the amount of plaintiff's claim.

The certificate further provided: "Notice requiring payment of assessments, or for any other purpose, sent by mail to the post-office address of the member last appearing on the books of the association, shall be equivalent to personal notice. An affidavit or proof of addressing and mailing the same, according to the usual course of business of said association, shall be accepted as conclusive proof of such notice to the member, and to every person accepting and acquiring any interest hereunder."

In the statement attached to his application for membership, to the question, "Are you married?" the insured answered, "No."

The defendant insists that the answer of the insured to the above question was false, and that, therefore, the policy issued to the insured is void, and that the defendant is not liable for any sum by reason thereof.

The insured, Thomas J. Appleby, died on the 11th day of March, 1897, at the city of Auburn, N. Y. On the 10th day of April, 1897, proofs of death were furnished to the defendant and accepted by it, and on the 5th day of May, 1897, the president and secretary of the branch of the defendant to which the insured belonged notified Honorah McCarthy, the supreme recorder of the defendant, of the death and certified that the deceased was a member in good standing of the defendant.

On the 5th day of February, 1898, after the plaintiff had demanded payment upon the policy in question, which was refused by the defendant, and more than six months after this action had been commenced to recover the amount of such policy, and after the defendant had served its verified answer to the complaint, in which, among other things, it was alleged as a defense that the insured falsely stated, at the time he made application for member-

ship in the defendant, that he was not married, whereas, in fact, he was, the defendant levied an assessment upon its members for the purpose of paying, among others, the amount of the policy issued to Thomas J. Appleby, and it was stated in such notice of assessment that the assessment for the death of Thomas J. Appleby was assessed out of the regular order because of a contest over the beneficiary. That assessment so levied was collected by the defendant.

Before the death of Thomas J. Appleby there was an assessment made by the defendant of one dollar and forty-five cents against him. That assessment, at the time of his death, was unpaid. Shortly after his death such assessment was paid, for and on behalf of the beneficiary, to the defendant and accepted by it.

The contention presented by the record in this case is:

*First.* Was the insured, Thomas J. Appleby, at the time he made application for membership in the defendant, married, and was his answer " No " to that question false?

*Second.* If such answer was false and thereby worked a forfeiture of the policy in question, was such forfeiture waived by the acts of the defendant after it became aware that such statement was false?

*Harry Otis Poole* and *Selden S. Brown*, for the appellant.

*James Lyon*, for the respondent.

McLENNAN, J.:

The defendant, to establish the falsity of the answer of the insured to the question " Are you married? " read in evidence the testimony of Catherine Appleby, which was taken on the 5th and 6th days of April, 1898, upon commission, before the United States Consul and Commissioner, at Dublin, Ireland. The witness testified, in substance, that she married (a) Thomas Appleby at Westland Road Chapel, in Dublin, about eighteen years ago; that his, Thomas Appleby's, occupation was grocer's curate; that they lived together four years; that one child was born about the year 1881, whose name was Margaret; that while they were living together as husband and wife, her husband's mother, Ellen Appleby, and his two sisters, Margaret and Ellen Appleby, visited them. · The witness identified Exhibit B in the case as her husband's handwriting. She also identified a photograph shown her as being the photograph of

herself and her husband, which is marked Exhibit A, and she testified that such photograph was taken soon after they were married. She also testified that a Mr. Richard Worn and her sister, Margaret McKeon, were acquainted with herself and her husband. The witness further testified that her husband left her about thirteen years before the date when she was examined as a witness (April 5, 1898), and went to America; that her daughter Margaret was then about four years of age. The witness states that she saw the letter, Exhibit B, which was sent to her sister from America. The witness identified Exhibit A as being the photograph of herself and her husband, Thomas Appleby, and she identified the letter, Exhibit B, as being in the handwriting of her husband.

The testimony of Richard Worn, also taken upon commission, was read in evidence. The witness states that he knew Thomas Appleby, and clearly identifies the person mentioned by the last witness, and he states that he, said Thomas Appleby, was a married man, and that his wife's name was Catherine Appleby; that after they were married he knew them for two or three years. He states that Thomas Appleby and Catherine, his wife, had one child, named Margaret. The witness also states that a few years after the marriage the husband of Catherine Appleby went away. The photograph, Exhibit A, the witness identifies as being the photograph of Catherine and Thomas Appleby, whom he testifies were husband and wife at the time of which he speaks.

The testimony of Charles McCullagh, also taken by commission, states, in substance, that he is the son of Catherine Appleby by a former marriage; that after his father's death his mother married a man by the name of Thomas Appleby; that his mother and said Thomas Appleby lived together as man and wife, and that he, the witness, lived with them. He states that the husband of his mother left them a few years after their marriage, and never returned. The photograph, Exhibit A, is identified by this witness as the likeness of his mother and stepfather, Thomas Appleby.

The testimony of Margaret McKeon, also taken by commission, states that she is a sister of the Catherine Appleby hereinbefore mentioned, and she states that said Catherine is now living with her son, Charles McCullagh. She states that Catherine married a man by the name of Appleby, and that Catherine and said Appleby

lived together as husband and wife; that the husband went to America. She says that her sister Catherine and Thomas Appleby lived together between three and four years, and that one child was born to them, a daughter, Margaret Appleby; that said daughter is seventeen or eighteen years of age. The witness states that the photograph, Exhibit A, is a photograph of Thomas Appleby and of her sister Catherine Appleby, and that the letter, Exhibit B, is in the handwriting of Thomas Appleby, the husband of Catherine.

The letter marked Exhibit B, which was identified as being in the handwriting of Thomas Appleby, was dated "33 Market Street, Auburn, N. Y., U. S. A., August 15th, '86," and was addressed to "Miss Margret McKeon, 17 Dawson St., Dublin City." It appears by her evidence, above referred to, that she was the sister of Catherine Appleby, the alleged wife of Thomas Appleby.

The only important part of the letter — Exhibit B — is as follows:

" DEAR MARGRET :

" You tell Kate that I will send for her any time, as soon as I get to work again, if she wishes to come to America, or I will send her more or less money hereafter if she does not come. * * * Dear Margret, I hope you will answer as soon as possible and send me Kate's address, so I can write to her myself."

The letter was signed, " Your brother, Tom."

Margaret Donelly was called as a witness for the defendant. She testified that she resided at the village of Oneida, in this State; that she was born in Ireland, and came to America some nine years ago; that she was the youngest sister of Thomas J. Appleby. She says that she last saw the deceased, Thomas J. Appleby, in Auburn, and had seen him on different occasions in that city; that he formerly lived in Ireland; that he came to the United States about seventeen years ago. She states that she knew the family of the deceased in Ireland, and that he had a wife and child; that his wife's name was Catherine Appleby, and his daughter's name was Margaret Appleby. The witness was shown the photograph, Exhibit A, and she states positively that it was the picture of Thomas J. Appleby, the deceased, her brother, and of his wife, Catherine Appleby.

FOURTH DEPARTMENT, MARCH TERM, 1899.        [Vol. 39.

The witness also states that Exhibit B is in the handwriting of Thomas J. Appleby, the deceased, and that the address upon the envelope in which said letter was inclosed was also in the handwriting of the deceased.

Thomas H. O'Neil was also called by the defendant, and testified that the photograph, Exhibit A, was the photograph of Thomas J. Appleby, the insured, and the photograph of the person who signed the application and to whom the certificate in question was issued. The witness states that he knew Thomas J. Appleby prior to his death for twelve or thirteen years, but that he had no business relations with him.

It will be observed that the only witnesses called by the defendant who identified Thomas J. Appleby, the insured, as the Thomas Appleby who was married to Catherine McCullagh (Appleby) on the 16th day of August, 1879, or at any other time, were the witness Margaret Donelly, who, it appears, is an interested witness, she having an action pending against the defendant to recover the amount of the insurance in question, and the witness Thomas H. O'Neil, who is the president of the defendant, and must also be regarded as an interested witness; and the only witness called by the defendant who identified the letter, Exhibit B, as being in the handwriting of Thomas J. Appleby, the insured, is Margaret Donelly, who, as before said, is interested in preventing a recovery on the part of the plaintiff in this action.

The foregoing is the substance of all the evidence given by the defendant upon the trial in support of the proposition that the answer " No " of the insured to the question " Are you married ? " was false.

The plaintiff called as a witness Celia McCormick, who was the wife of the beneficiary, James McCormick, and she testified that she knew Thomas J. Appleby, the insured, for fourteen or fifteen years; that he came to live at her house in March, 1888, and had lived there continuously until a week before his death, and that he died at her house on the 11th day of March, 1897. She says the photograph, Exhibit A, is not the picture of the deceased. She swears positively that the features in the photograph, Exhibit A, are not like his, and swears positively that the photograph is not the photograph of the deceased. This witness testifies that she has a

photograph taken of the deceased, which was a correct photograph of him.

Margaret Coughlin, another witness called by the plaintiff, testifies that she knew Thomas J. Appleby for fourteen years; that she is a member of the defendant association. She states that the photograph, Exhibit A, is not the photograph or picture of Thomas J. Appleby, the deceased.

Seymour Squyer, called as a witness for the plaintiff, testified: "I am a photographer and have been engaged in that business thirty-five years; am in general line of photography, enlarging pictures, etc. I knew Thomas J. Appleby in his lifetime. I knew him fifteen, sixteen or seventeen years ago for the first time. [Photograph shown witness.] I remember taking that picture. It is a picture of Mr. Appleby, and it is a correct likeness of him at that time; it is a good picture of him. [Tintype before mentioned shown witness.] I do not recognize the man standing in that tintype."

The photograph taken by the witness was received and marked Exhibit 9.

On cross-examination the witness testifies positively that the picture in the tintype, Exhibit A, is not a picture of Mr. Appleby, the deceased, and witness goes on to state: " A man can change in appearance, but certain features cannot change. The distinction between these two photographs, Exhibit 5 and Exhibit 9, is that the bridge of the nose cannot change. The breadth of the chin cannot change. The bone tissue, and they are entirely different. The gentleman standing in the tintype has a straight nose with a slight curvature. Mr. Appleby's nose turned a trifle up. You change your outline, but you don't change the form of your features, the line you judge by. Mr. Appleby's chin is narrower than the gentleman's standing in the tintype. The bone tissue could not be accounted for by difference in weight and flesh. I swear that the tintype is not a picture of Thomas Appleby."

Alice Miles, called as a witness for the plaintiff, testifies that she knew Thomas J. Appleby for fourteen years; that Mrs. McCormick, the wife of the plaintiff, is her sister; that she was present when the deceased died. She states that the photograph, Exhibit 9, is a correct likeness of the deceased as he appeared when she first knew him, fourteen years ago; that she had a picture just like it. The

witness states that the tintype, Exhibit A, she would not know; that she should not say it was the picture of the deceased.

Fred Tournier, another witness called by the plaintiff, who was a photographer and had been engaged in that business for fifteen years, testified that in his opinion the two photographs, Exhibits A and 9, were not the photographs of the same person, and the photographer goes on to show how the characteristics of the two differ.

Another witness called by the plaintiff, Ellen Ibbotson, testified that she was a member of the defendant association; that she was a charter member; that she knew Thomas J. Appleby for fifteen years; that she was familiar with his looks and appearance. She said that the photograph, Exhibit 9, was the photograph of Thomas J. Appleby. She said that the photograph, Exhibit A (or Ex. 5, as it is sometimes called in the record), in her opinion was not the photograph of Thomas J. Appleby, deceased.

While the evidence tends very strongly to establish the proposition that when the insured, Thomas J. Appleby, asserted in the statement attached to his application for membership in the association of the defendant that he was not married, such statement made by him was false, we think that the evidence presented a question for the jury, and that the jury having found adversely to the defendant upon that proposition, it cannot be said that the finding was against the weight of evidence.

It appears by the record that there is a controversy between the plaintiff, the beneficiary named in the certificate, the sister Margaret Donelly, and the alleged wife of the deceased, Catherine Appleby, as to who shall receive the amount due upon the certificate in question; and upon the evidence, and under all the circumstances, we think that the learned trial justice properly submitted the question to the jury for its determination as to whether the insured, Thomas J. Appleby, made a false statement when he asserted that he was not married.

In his charge to the jury the learned trial justice said: "Upon that point you have heard the testimony of the witnesses called by the defendant and you have heard read the testimony of certain parties taken by commission. The insured's sister testified that he was married in Ireland, and that he lived with his wife for a number of years, and that he had one child. She also testified that she

attended the funeral and recognized the remains as those of her brother. You are to determine, therefore, from the evidence, whether her testimony is reliable and whether it is corroborated. She had an opportunity to know whether her brother was a married man or not, and she had an opportunity to view the remains of the insured and to say whether it was her brother. You may also take into consideration whether her testimony has been corroborated by those whose testimony was taken by commission. Does it satisfy you that the insured was her brother, and that he was married at the time he made application for the insurance policy? If you are satisfied upon that point then the policy is void and the plaintiff cannot recover," unless, etc.

To this portion of the charge the learned counsel for the defendant did not except, and did not ask to have it modified or changed.

It is contended on the part of the respondent that, even if the insured falsely stated that he was not married, and thereby the policy became void, the defendant by its acts after the death of the insured waived such defense.

As before said, an assessment had been made by the defendant upon the policy of the insured prior to his death, and at the time of his death such assessment had not been paid. The witness Celia McCormick, the wife of the plaintiff, testified in substance that soon after the death of the insured she called upon the president of the defendant; that she asked him what she would do about the certificate, and that he told her there was a protest entered and that she would not get the insurance; that he told her that the protest was that Appleby, the insured, had a wife and sister; that she then asked him, the defendant's president, if she had to pay the assessment that was in, and that he replied that she paid the rest and she might as well pay that. The witness states that she then saw Mrs. Hubbard, the secretary of the defendant, and that the secretary told her in substance that they had been informed that the insured had a wife and sister, but not to worry about it; that she did not think it would amount to anything; that she then paid the assessment to the secretary, and it was received by the defendant. This payment was made on the 20th day of March, 1897, nine days after the death of the insured.

The witness Alice Miles testifies that she was present and heard

the conversation between Mrs. McCormick and the defendant's president, and she states that Mr. O'Neil stated that there had been a protest to the effect that the deceased had a wife in Ireland.

Mrs. Hubbard, the secretary of the defendant, testified in substance that she had heard the report that the insured was a married man and had a wife and daughter in Ireland, and that she received the assessment after receiving such information.

The assessment in question was paid after the defendant had refused to pay the insurance, basing its refusal upon the ground that the insured had falsely stated that he was not married in his application.

The defendant's president, O'Neil, contradicts the testimony of the plaintiff's witnesses in some particulars in respect to what occurred at the time the assessment in question was paid, but he states that he informed Mrs. McCormick in substance that a protest had been filed by an uncle of the deceased, to the effect that the insured was married and had a wife living. He states that he did not state to Mrs. McCormick that she would have to pay said assessment, but he states that he said to her that it would have to be paid; that he did not say who was to pay it.

It also appears that on the 5th day of February, 1898, after defendant had refused to pay the insurance in question because of the alleged false statement of the insured contained in the application, and more than six months after this action had been commenced, and the defendant had served its verified answer to the complaint, alleging the false statement of the insured, and the fact that he was married at the time the policy in question was issued to him, and that for that reason the policy was void, the defendant levied an assessment upon its members to pay the claim arising on account of the death of Thomas J. Appleby, and that such assessment was collected and received by the defendant. In the month of April, 1897, after the death of the insured, proofs of death were prepared, sworn to before the president of the defendant, and accepted by the defendant.

Under those circumstances, we think it was a question for the jury to determine whether the defendant had not waived its right to insist upon a forfeiture of the policy in question, even if such right had existed by reason of the false statement of the insured. That ques-

tion was fairly submitted to the jury by the learned trial justice. After calling their attention to the facts relied upon by the plaintiff to constitute a waiver of the forfeiture, the court said :

" If you reach the conclusion that he (the insured) was not married, then the defendant has failed to establish that point, and the plaintiff is entitled to recover. If, on the other hand, you come to the conclusion that he was married at that time, then your verdict should be for the defendant, unless the defendant, after being in possession of the facts, after the protest was made for the payment of this insurance policy, continued to receive or did receive the premiums from the beneficiary named, then it waived the forfeiture, and the plaintiff is entitled to recover."

The case of *Magner* v. *Mutual Life Association* (17 App. Div. 13) was an action to recover upon a policy of insurance, and the defendant insisted that the insured made a false statement as to her age, and falsely stated that she was not insured in any other company. After the death of the insured and after the defendant was informed of the falsity of such statements, it demanded and received an assessment or premium, and it was held that the acceptance of such premium was a waiver of all defenses then known to exist. The court says : " This assessment or premium was paid by the beneficiary pursuant to a demand by the defendant after proofs of death had been received, after the defendant knew of the statement of age made to the Industrial Benefit Association, and after the defendant knew that she had untruly stated that she was not insured in any other corporation or association, and the acceptance of this sum was a waiver of all defenses then known to exist."

In the case of *Titus* v. *Glens Falls Insurance Company* (81 N. Y. 410), which was an action to recover upon a policy of fire insurance, which contained a condition declaring it void in case foreclosure proceedings were commenced against the insured property, it was held that a foreclosure having been commenced and judgment of foreclosure having been obtained before the fire, the policy became forfeited ; but it was held that as the defendant, after the fire and after it had notice of the proceedings, had required the defendant to appear and be examined, and as it had the right to make such examination only by virtue of the policy, that was a recognition of its validity, and was a waiver of the forfeiture.

In the case of *Mutual Benefit Association* v. *Beck* (77 Ind. 203) the court say, per WOODS, J. : " The logical and necessary deduction from this doctrine is that a distinct act of affirmance of the contract by the party entitled to avoid it, made with knowledge of the facts, and especially such acts as the demand and receipt of premiums or assessments, would constitute a waiver of the forfeiture, or of the right to annul the contract."

If the defendant demanded and received the assessment in question after the death of the insured, with full knowledge of all the facts respecting the falsity of the statement of the insured relied upon by it to defeat the policy, it waived such forfeiture, and cannot now avail itself of such defense. Upon the evidence the jury were justified in concluding that the defendant demanded and received the assessment under those conditions.

We think that, upon the whole evidence, the issues involved were properly submitted to the jury for its determination, and that the verdict ought not to be set aside as being against the weight of evidence.

The exceptions taken by defendant's counsel to which our attention is called, do not present error which calls for a reversal of the judgment.

The judgment and order appealed from should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.