Argued January 20, reversed February 10, petition for rehearing
denied June 2, 1954

# KLEINSCHMIDT *v.* MATTHIEU ET AL.

### 269 P. 2d 686

*Paul R. Harris,* of Portland, argued the cause for appellant. With him on the brief was Henry Bauer, of Portland.

*Robert F. Maguire,* of Portland, argued the cause for respondents. On the brief were Stephen W. Matthieu and Maguire, Shields, Morrison & Bailey, of Portland.

LATOURETTE, C. J.

The question posed is whether an action for libel lies against the estate of a testator whose will contains words libelous per se. The challenged language is:

"To my grandson, Harrison Mercer Kleinschmidt, I give and bequeath the sum of ten Dollars ($10.00). I have already given my said grandson the sum of One Thousand Dollars ($1,000.00) which he squandered. This provision is no different than that I have made for my said grandson in preceding wills over a number of years and expresses the regard in which I hold my said grandson, who deserted his mother and myself by taking sides against me in a lawsuit, and because he is a slacker, having shirked his duty in World War II."

The trial court ruled in the negative, sustaining the general demurrer to the complaint; hence the appeal. This question is of first impression in this court.

The rule that there is no such right of action is laid down in the following cases: *Citizens' & Southern Nat. Bank v. Hendricks,* (1933) 176 Ga 692, 168 SE 313, 87 ALR 230; *Carver v. Morrow,* (1948) 213 SC 199, 48 SE2d 814. Defendants also cite *Nagle v. Nagle,*

(1934) 316 Pa 507, 175 A 487. That such an action will lie is sustained by the following authorities: *Harris v. Nashville Trust Co.*, (1914), 128 Tenn 573, 162 SW 584; *Brown v. Mack*, 56 NYS2d 910; *Gallagher's Estate*, 10 Pa Dist R 733; *In re Draske's Will*, 290 NYS 581.

In *Citizen's etc. v. Hendricks*, (1933) supra, the denial of libel was based principally on the maxim, *Actio personalis moritur cum persona*, (a personal action dies with a person), and, secondly, that there was no publication by the executor since he is an agency of the law to administer the estate and not the representative of the testator. In the *Carver v. Morrow case*, (1948), supra, the reasoning of the Georgia case was adhered to. It is difficult to determine from the Nagle case, supra, whether there was an absolute or a qualified privilege involved, although from the language used it would seem that the court was relying upon a qualified privilege. Further, the executors, in the performance of their duties, alleged the illegitimacy of the alleged heir rather than the testator.

In *Harris v. Nashville Trust Co.*, (1914), supra, the maxim, *Actio personalis moritur cum persona*, so far as it relates to the question before us, is exploded. It is there pointed out that the tort for which liability attached was not committed during the lifetime of the testator, that publication of the will is the gravamen of the offense and that did not take place until after the demise of the libelant. It is there stated that the above maxim has been denounced by leading text writers and is not a favorite with the courts. Further, it is stated:

"Its origin, as said by Bowen, L. J., in Finley v. Chirney, 20 Q. B. D. 494, 508, is 'obscure and post-classical.' It is said by a great commentator to be

barbarous, and to rest on adjudication in fact. Pollock on Torts, 53.

"Mr. Jaggard, in his work on Torts, vol. 1, p. 328, says that all the reasons that have been given for the rule are unsatisfactory, if not absurd.

"Mr. Tiffany in the last edition of his Death by Wrongful Act reviews the cases which undertake to give a reason for this maxim, and rejects all of them as insufficient. He concludes with a quotation from the New York court: 'It is of no practical utility to search for the reason of the rule; it remains somewhat obscure. Green v. Hudson River R. Co.' Tiffany on Death by Wrongful Act, section 16 and preceding sections.

"The Supreme Court of Michigan says: 'The rule rests more on artificial distinction than any real principle, and savors more of the logic of the schoolman than of common sense.' Hyatt v. Adams, 16 Mich. 180.

"Quotations might be multiplied from the cases and from text writers in accord with the foregoing, but it is sufficient to say that no reason has ever been assigned for the existence of this rule which would satisfy an enlightened court of modern times.
"* * * * *

"The tendency, therefore, has all the while been by decision and by statute to limit and circumscribe the effect of the rule that actions abate by the death of the parties thereto. There is no case to be found within the last two centuries in which the scope of this rule has been extended or broadened.
"* * * * *

"So we are unwilling to apply the rule relied on by the executor in this case. The rule excludes this case from its operation by its very terms. As we have seen, it indicates as within its meaning only those causes of action which had accrued prior to the death of the person. We would not be justified in disregarding the ordinary laws of grammatical construction to widen the scope of a well-nigh discredited maxim like this one."

■ It is argued that since an executor is the agent of the testator during his lifetime, the agency derived therefrom, not being coupled with an interest, dies with the death of the testator, and that in the probate of a will an executor is an officer of the court and his acts in probating the will are those of the court rather than of a testator; therefore there could be no publication of the same by an executor on behalf of a testator. According to 1 Restatement of the Law of Agency, p 7,

> "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

By no stretch of the imagination could the relationship between a testator and executor arising out of the execution of a will, during the lifetime of a testator, fit into the above pattern. We therefore conclude that a named executor in a will is not ordinarily the agent of the testator during the life of the latter, and, consequently, the alleged agency could not be interred with him.

■ Nor does the executor become an officer or agent of the court until he is appointed and letters testamentary are issued to him.

In *Holladay v. Holladay*, 16 Or 147, 149, 19 P 81, we said:

> "An executor is a person to whom the deceased has confided the execution of his last will. He derives his appointment from the will, and upon it his authority is grounded. The letters issued to him by the probate judge 'are but the authentic evidences of the power conferred by the will, and are founded upon the probate of that instrument.'

Hartnell v. Wandall, 60 N. Y. 350. Although he may not act, except in a few particulars, until the will is probated and letters testamentary issued, yet this fact does not affect the efficiency of the will as the source of power."

Again, in *Huber v. Tazwell*, 132 Or 122, 127, 283 P 745, we said:

"* * * Under our statute, while the executor derives his authority primarily from the will, the mere nomination standing alone is not sufficient to constitute one an executor. The appointment must be recognized and confirmed by the county court and, while it is the duty of the county court to appoint the executor named in the will if he is not disqualified under the statute, yet issuance of letters testamentary are essential to give him authority to act. * * *" See *In re Workman's Estate*, 151 Or 475, 478, 49 P2d 1136.

■ It therefore appears that there is a hiatus between the testator's death and the court appointment of the executor. During this period when he, or the custodian of the will, files the same with the clerk, he is not acting for the court but necessarily for the deceased. When the testator executes his will he does the same with full knowledge that the same will be made public, and, although the executor or custodian in such instance is not what would strictly be called an agent under the common-law rule, yet he is an instrumentality through which the will is published, and when he does thus act he in effect publishes the will at the behest of the testator.

■ It is next contended that the publication of the will in the course of the proceedings in probate was and is absolutely privileged. This reasoning is fallacious in that the publication of the will, as we have held, antedates the probate thereof.

In *Brown v. Mack,* supra, 56 NYS 910, 917, we read:

"The will of the testator herein was not made in a judicial proceeding. It was an instrument to pass title to property and more likely to become the subject of judicial proceeding than a deed or bill of sale. Eventually, to be effective it had to be probated. However, the testator was not a party to a judicial proceeding when he drew the will. He was not a party to the probate proceeding which followed his death. Moore v. Manufacturers' National Bank of Troy, supra.

"A testator may properly give the reasons for disinheriting the natural objects of his bounty. Though such provisions are neither necessary nor dispositive, they are frequently important in a probate proceeding. However, justice and public policy suggest that the testator should not have a shield of privilege. If the libelous criticism of his distributees is true, his estate has the defense of justification. He composed the alleged libel and in justice his estate should bear the burden of defending it."

In the light of modern jurisprudence, we believe that the rule laid down in the *Harris v. Nashville Trust Company* case, supra, and others, is the most salutary one. We again quote from that decision:

"By the grace of the law a man is allowed to control the disposition of property after his death and to do many other things by will. He is thus allowed to project his individuality, his grasp, and his desires, beyond the grave, and make them effective. If by will he breaches his contract, his executor and his estate are made to respond. If by will he commits a tort there seems to be no good reason why his executor and his estate should not likewise be held accountable. With the maxim, 'Actio personalis moritur cum persona,' out of the way, there is no good reason, and we have seen that this maxim does not touch this case.

"If relief be denied to this plaintiff in this suit, she is indeed in bad plight. There is no other way in which she may vindicate the virtue and integrity of her mother and establish for herself the position in society which she is entitled to occupy. If relief be denied to her, she, during her lifetime, and her children for generations, must bear the reproach of the bar sinister. It cannot be said that the law affords no remedy for a wrong such as the one perpetrated bv this testator.

"The maxim relied on by the executor has no application to the facts of this case, nor does any other principle of the law to which our attention has been called stand in the way of plaintiff's recovery."

Dean Prosser, in his valuable work on Torts, p 813, said:

"* * * The probate of a will containing defamation is a publication, which has been held to be chargeable not against the executor personally, since he has no choice in the matter, but against the estate of the testator who has made the publication necessary. Although this does not fit very well into the common law rule that liability for personal torts dies with the tortfeasor, the conclusion seems very desirable for the protection of those who would otherwise be helpless against the malice of the dead. * * *"

We read the following in Harper on the Law of Torts:

"* * * Ordinarily, the publication must be done by the defendant or by his consent or procurement. But if the person who wrote a libelous statement leaves it in such a form and under such circumstances that it will necessarily be published by others, through no fault of their own, he may be liable if he intended such result. An extreme example is the case of libelous matter left in a will. Several cases have held a decedent's estate liable

under such circumstances, although the reasoning upon orthodox doctrinal grounds is a bit strained. The decedent did not himself publish the libel and the administrator is hardly to be considered as his agent. But the decedent intended the publication and left the libel under circumstances that made its publication inevitable. The result reached in these cases, therefore, seems commendable.''

This is a novel case and there are very few judicial utterances on the question. One line of cases misapplies an old principle of law which has been discredited by text writers and court decisions while the other adopts a rule that is ''consonent with the trend of present-day judicial thinking and with modern conceptions of justice.'' *Bedell v. Goulter,* 199 Or 344, 261 P2d 842.

We call attention to the following language in *Hinish v. Meier & Frank Co.,* 166 Or 482, 504, 113 P2d 438:

''We should not be deterred by fear of being accused of judicial legislation. Much of our law is judge-made, and there are those who think that it is the best law. Cardozo, 'The Growth of the Law', p 133. The common law's capacity to discover and apply remedies for acknowledged wrongs without waiting on legislation is one of its cardinal virtues. The so-called 'family purpose doctrine', approved by this court in McDowell v. Hurner, 142 Or. 611, 13 P2d 600, 20 P2d 395, 88 A. L. R. 578, is a creation of the courts, and so, as Mr. Justice Bailey points out in the opinion in that case, are the defenses of fellow-servant, assumption of risk and contributory negligence. Courts cannot, of course, as Sir Frederick Pollock says in 'The Expansion of the Common Law', p. 49, 'lay down any rule they choose'. He continues, however: 'They may supplement and enlarge the law as they find it, or rather they must do so from time to

time, as the novelty of questions coming before them may require; but they must not reverse what has been settled.' "

■ Since the law in Oregon has not been settled on the question before us and since § 10, article I of our constitution gives every man a remedy for injury done to his reputation, and since the question of a right to recover for libel by will had never arisen under the common law of England, Gatley on Libel and Slander (British) 1953 ed, p 414, we hold that an action will lie against a testator's estate for libelous matter contained in a will published after the death of a testator.

The court erred in sustaining the demurrer to the complaint. The judgment will be reversed.