HARRIS *et al. v.* NASHVILLE TRUST CO.

(*Nashville.* December Term, 1913.)

1. **ABATEMENT AND REVIVAL.** Survival of causes of action. Libel.

An action may be maintained against an executor as such for damages from a libel contained in a will published by the probate thereof, the maxim, "*Actio personalis moritur cum persona*" not applying, since the right of action did not exist in the lifetime of the testator. (*Post, p.* 577.)

Cases cited and approved:   McGhee v. Baumgartner, 121 Mich., 287; Allen v. Pioneer Press Co., 40 Minn., 117; Osborn v. Leach, 135 N. C., 628.

2. **LIBEL AND SLANDER.** Libelous words. Charge of Illegitimacy.

It is libelous *per se* to charge one in print or writing with being illegitimate. (*Post, p.* 578.)

Cases cited and approved:   Shelby v. Sun Printing, etc., Assn., 38 Hun (N. Y.), 474; Mix v. North American Co., 12 Pa. Dist. R., 446.

3. **EXECUTORS AND ADMINISTRATORS.** Actions.

Where a libel contained in a will was published by the probate thereof, the testator, and not the executor, was liable, since a principal is responsible where authority is given to an agent to publish libelous words, and the publication is made in substantial accord with such authority and the publication by the executor was in literal pursuance of the authority given; it being his duty to probate the will. (*Post, pp.* 578, 579.)

Code cited and construed:   Sec. 6565 (S.).

Cases cited and approved:   Dawson v. Holt, 79 Tenn., 583; Wilson v. Noonan, 27 Wis., 598; Adams v. Kelly, 1 Ry. & M., 158; Bacon v. Mich. Central R. Co., 55 Mich., 224; Smith v. Harrison, 49 Tenn., 230; Douglass v. Baber, 83 Tenn., 651.

4. **TORTS.** Right of action.

That no precedent can be found for an action in tort, though to be considered, will not of itself prevent relief; the determinative question being whether a wrong has been inflicted for which plaintiff is entitled to recover lawful damage. (*Post, p.* 579.)

Cases cited and approved: Kujek v. Goldman, 150 N. Y., 176; Rice v. Coolridge, 121 Mass., 393; Jacob v. State, 22 Tenn., 493.

5. **LIBEL AND SLANDER.** Publication. Republication.

The probate of a will was a publication of a libel contained therein sufficient to sustain a suit even if, as claimed, there was a publication thereof during the testator's lifetime by the dictation of the will to a stenographer. (*Post, p.* 580.)

6. **ABATEMENT AND REVIVAL.** Survival of causes of action.

The maxim, "*Actio personalis moritur cum persona*," is based upon no very satisfactory reason, and is not favored by the courts. (*Post, p.* 581.)

Case cited and approved: Hambly v. Trott, 1 Cowp., 373, 98 Eng. Reprint, 1136 in 1776.

Cases cited and disapproved: Finley v. Chirney, 20 Q. B. D., 494, 508; Hyatt v. Adams, 16 Mich., 180.

7. **ABATEMENT AND REVIVAL.** Survival of causes of action. Statutory provisions.

Shannon's Code, sec. 4569, provides that no civil action commenced whether founded on wrongs or contracts, "except actions for wrongs affecting the character of the plaintiff" shall abate by the death of either party, but may be revived. *Held*, that the exception as to wrongs affecting the character of plaintiff did not defeat an action based on a libel contained in a will first published after the testator's death, as that action relates only to actions commenced during the lifetime of the deceased party. (*Post, pp.* 585, 586.)

Code cited and construed: Sec. 4569 (S.).

Cases cited and approved: Dayton v. Lynes, 30 Conn., 351; Napier v. Trimmer, 56 Ga., 300; Frost v. Tarr, 53 Ind., 390;

Harris v. Trust Co.

Lee v. Carter, 52 Ind., 342; Bell v. Hewitt, 24 Ind., 280; Baker v. Syfritt, 147 Iowa, 49; McGuire v. McGuire, 11 Bush. (Ky.), 142; Freel v. Freel, 7 Ky. Law Rep., 288; Jenkins v. Stetson, 9 Allen (Mass.), 128; Sword v. Keith, 31 Mich., 247; Clark v. Cordry, 69 Mo. App., 6; Cullen v. Woolverton, 65 N. J. Law, 279; Van Horn v. Demarest, 76 N. J. Eq., 386; Andrews v. Brewster, 124 N. Y., 433; Whitcomb v. Whitcomb, 92 Hun, 443, 36 N. Y. Supp., 607; Sherman v. Scott, 27 Hun (N. Y.), 331; Burgess v. Burgess, 109 Pa., 312.

FROM DAVIDSON.

Appeal from Circuit Court, Davidson County.— THOS. E. MATHEWS, Judge.

STOKES & STOKES, for plaintiffs.

PARKS & BELL, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Mrs. Cleo Woodfin Harris, joined by her husband, F. H. Harris, to recover damages from the Nashville Trust Company, executor of R. H. Woodfin, on account of a libel against the plaintiff contained in testator's will and published by the probate of said will in Davidson county.

A motion to dismiss, which was treated by the parties as a demurrer, was filed in the trial court and

there sustained. The court of civil appeals reversed the action of the trial judge, overruled the demurrer, and remanded the case for further proceedings. The case is before us on petition for *certiorari* granted to the action of the court of civil appeals.

The declaration avers that the plaintiff Cleo Woodfin Harris was the niece of testator, R. H. Woodfin; that prior to the death of the latter, she had instituted suit against her uncle, the said Woodfin, to recover her interest in her grandmother's estate in the hands of decedent; that thereafter, actuated by malice, and with the intention of defaming her character and reputation, the said Woodfin added a codicil to his will containing the following language:

"And this sum of two hundred and fifty (250) dollars to John Woodfin, $1 to William Woodfin, and $1 to Cleo Woodfin, *the illegitimate children of my brother James Woodfin,* is all that they are ever to have of my estate."

The declaration further sets out that the testator died during the year 1910, and that his will, with the aforesaid codicil, was duly probated in the county court of Davidson county, and defendant, the Nashville Trust Company, qualified as the executor thereof.

It was averred by the plaintiff that she was the lawful child of her parents, the mother of several children, and that said codicil was maliciously added to his will by the testator in order to blacken her character and that of her offspring, and that, said libel being published by the probate of said will as aforesaid, she

accordingly sued the executor to recover damages in the sum of $20,000.

The principal question raised by the demurrer below was on the right of plaintiff to maintain this action *ex delicto* against the executor for testator's tort. The circuit judge was of opinion that the maxim, "*Actio personalis moritur cum persona,*" was controlling and dismissed the suit. As said before, the court of civil appeals took the opposite view.

If we leave out of consideration the maxim referred to, and its effect on the rights of these parties, there seems to be no reason why this action cannot be maintained.

A tort has certainly been committed with respect to the rights of this plaintiff.

The enjoyment of private reputation *unassailed* is a right entitled to the protection of the law and of the constitution as much as are the rights to the possession of life, liberty, or property. *McGhee* v. *Baumgartner,* 121 Mich., 287, 80 N. W., 21; *Allen* v. *Pioneer Press Co.,* 40 Minn., 117, 41 N. W., 936, 3 L. R. A., 532, 12 Am. St. Rep., 707; *Osborn* v. *Leach,* 135 N. C., 628, 47 S. E., 811, 66 L. R. A., 648.

To traduce one's private reputation—to invade the enjoyment of this reputation—is, of course, a breach of the legal duty one owes to another, and is a tort for which an action will lie. If such a wrong be committed by written words, upon publication of such writing, an action for libel at once accrues to the party injured.

128 Tenn. 37

It is libelous *per se* to charge one in print or writing with being illegitimate, and no special damages need be averred in a declaration founded on a libel of this character. 25 Cyc., 264; *Shelby* v. *Sun Printing, etc., Assn.*, 38 Hun (N. Y.), 474; *Mix* v. *North American Co.*, 12 Pa. Dist. R., 446.

No more effective means of publishing and perpetuating a libel can be conceived than to secure the inscription of such matter on court records, as by probate of a will. The libel is not only permanently recorded, but in this case will be of widespread circulation for many years. This testator was the owner of considerable real estate, and every time a transfer of any of this property is made and an examination of the title necessitated, this will must be scrutinized, and the libel thus published will be called to the attention of parties interested. The stigma placed by testator upon this plaintiff and her descendants will be thus made conspicuous for years to come.

It is well settled that a principal is responsible where authority is given to an agent to publish libelous words and a publication is made by the agent in substantial accord with his authority. *Dawson* v. *Holt*, 11 Lea, 583, 47 Am. Rep., 312; *Wilson* v. *Noonan*, 27 Wis., 598; *Adams* v. *Kelly*, 1 Ry. & M., 158; *Bacon* v. *Mich. Central R. Co.*, 55 Mich., 224, 21 N. W., 324, 54 Am. Rep., 372.

The publication of this libel was made by the agent the executor, in literal pursuance of the authority given; that is to say, it was made by the probate of

testator's will.  It was of course the duty of the execu-tor to probate this will, and for a suppression thereof criminal accountability would have followed.  *Smith* v. *Harrison,* 2 Heisk., 230; *Douglass* v. *Baber,* 15 Lea, 651; Shannon's Code, sec. 6565.

It is not a case, therefore, in which the agent, the executor, should be held to any liability, but if liability exists, the principal should be responsible.

Although the action is without precedent, it should not be defeated upon that ground alone if it can be sus-tained upon sound principles of law.

While the fact that no precedent can be found for an action in tort is to be considered, the novelty of the proceeding will not of itself prevent relief.  Every ac-tion in tort based upon a particular act or omission, when brought for the first time, is without a prec-edent.  The determinative question, therefore, is whether a wrong has been inflicted for which plaintiff is entitled to recover lawful damage, and not whether there is a precedent for the suit.  38 Cyc., 423; *Kujek* v. *Goldman,* 150 N. Y., 176, 44 N. E., 773, 34 L. R. A., 156, 55 Am. St. Rep., 670; *Rice* v. *Coolridge,* 121 Mass., 393, 23 Am. Rep., 279.

Speaking of the common law, this court has said:

"Though principles, when established by judicial determination, can only be changed by legislative enactment, yet such is its malleability (if we may use the expression) that new principles may be developed, and old ones extended by analogy, so as to embrace newly created relations and changes produced by time

and circumstances. Such it is, in Great Britain, at the present moment; such it was when we adopted it, and such it now is with us." *Jacob* v. *State,* 3 Humph., 493.

To return now to consideration of the maxim, "*Actio personalis moritur cum persona.*" Translated and grammatically confined, this principle does not touch the present case. To say that an action dies with the person, or as Lord Mansfield has rendered it, "is buried" with the person, implies that the cause of action existed in the lifetime of the person; that it was existing while the person lived and abated with his death.

The right of action here asserted never had any existence during the lifetime of the deceased, Woodfin. It did not accrue until the publication of the libel, made by the probate of the will, after testator's death. If, as insisted by counsel for the executor, there was a publication of this libel during Woodfin's lifetime by dictation of the will to a stenographer, still, this is not the publication complained of in this suit. The suit is founded on the republication of the libel by the probate of the will. "A substantial reiteration of a prior defamatory publication by defendant amounts to a republication, for which he will be responsible." 25 Cyc., 370.

So the tort upon which this suit is based was not committed until after the death of Woodfin. This right of action arose after Woodfin's death, and could not

have been buried with him.   The case therefore falls without the letter of the old rule.

The maxim, *"Actio personalis moritur cum persona,"* is by no means a favorite with the courts.   It has no champion at this date, nor has any judge or law writer risen to defend it for 200 years past.

Its origin, as said by Bowen, L. J., in *Finley* v. *Chirney*, 20 Q. B. D., 494, 508, is "obscure and postclassical."   It is said by a great commentator to be barbarous, and to rest on adjudication in fact.   Pollock on Torts, 53.

Mr. Jaggard, in his work on Torts, vol. 1, p. 328, says that all the reasons that have been given for the rule are unsatisfactory, if not absurd.

Mr. Tiffany in the last edition of his Death by Wrongful Act reviews the cases which undertake to give a reason for this maxim, and rejects all of them as insufficient.   He concludes with a quotation from the New York court: "It is of no practical utility to search for the reason of the rule; it remains somewhat obscure.   *Green* v. *Hudson River R. Co."*   Tiffany on Death by Wrongful Act, section 16 and preceding sections:

The supreme court of Michigan says: "The rule rests more on artificial distinction than any real principle, and savors more of the logic of the schoolman than of common sense."   *Hyatt* v. *Adams,* 16 Mich., 180.

Quotations might be multiplied from the cases and from text-writers in accord with the foregoing, but

it is sufficient to say that no reason has ever been assigned for the existence of this rule which would satisfy an enlightened court of modern times.

As pointed out in the case of *Finley* v. *Chirney*, 20 Q. B. D., 494, personal actions of almost every character were held to abate upon the death of the parties, in the early times of English Law. "Survival of causes of action was the rare exception. Nonsurvival was the rule."

The English courts, however, many years ago began to make exceptions to the operation of the rule embodied in the maxim here under discussion. The cases were reviewed by Lord Mansfield in *Hambly* v. *Trott*, 1 Cowp.. 373, 98 Eng. Reprint, 1136, in 1776, and he said, speaking of these cases:

"I think these conclusions may be drawn from them:

"First. As to actions which survive against an executor or die with the person on account of the cause of action. Secondly, as to actions which survive against an executor or die with the person on account of the form of action.

"As to the first, where the cause of action is money due, or a contract to be performed, gain or acquisition of the testator, by the work and labor, or property, of another, or a promise of the testator, express or implied—where these are the causes of action, the action survives against the executor. But where the cause of action is a tort, or arises *ex delicto* (as is said in Sir T. Raym. 57, *Hole* v. *Blandford*), supposed to be by force and against the King's peace, there the action

dies; as battery, false imprisonment, trespass, words, nuisance, obstructing lights, diverting a watercourse, escape against the sheriff, and many other cases of the like kind.

"Second, as to those which survive or die in respect of the form of action. In some actions the defendant could have waged his law, and therefore no action in that form lies against an executor. But now, other actions are substituted in their room upon the very same cause, which do survive and lie against the executor. No action where in form the declaration must be "*quare vi et armis, et contra pacem,*" or where the plea must be, as in this case, that the testator was not guilty, can lie against the executor. Upon the face of the record, the cause of action arises *ex delicto;* and all private criminal injuries or wrongs, as well as all public crimes, are buried with the offender."

The extent of the rule has been limited by cases subsequent to *Hambly* v. *Trott.* It would not be profitable to review such decisions here, for aside from the cases, there are now statutes in all jurisdictions where the common law prevails providing for the survival of nearly every form of action.

In Tennessee it is provided that no action shall abate save those "for wrongs affecting the character of the plaintiff." Shannon's Code, 4569.

The tendency, therefore, has all the while been by decision and by statute to limit and circumscribe the effect of the rule that actions abate by the death of the parties thereto. There is no case to be found with-

in the last two centuries in which the scope of this rule has been extended or broadened.

As illustrating the disposition of modern courts, we refer to the case of *Dayton* v. *Lynes,* 30 Conn., 351, where a deputy sheriff committed a default in his office and the party injured brought an action on the case for damages against the sheriff. The sheriff died while this action was pending, and "*Actio personalis moritur cum persona*" was invoked by his executor. The court, however, held that this maxim did not apply to a case where the tort out of which the action grew was the tort of a third party and not the tort of the deceased.

So we are unwilling to apply the rule relied on by the executor in this case. The rule excludes this case from its operation by its very terms. As we have seen, it indicates as within its meaning only those causes of action which had accrued prior to the death of the person. We would not be justified in disregarding the ordinary laws of grammatical construction to widen the scope of a well-nigh discredited maxim like this one.

There is nothing novel or unusual in a suit against an executor in his official capacity, based upon a provision of testator's will.

For instance, a testator may, during his lifetime, make a valid contract to dispose of property by will in a particular way. If he fails to make such a disposition of the property, or makes a different disposition of the property by his will, the executor is liable to

suit for breach of the testator's contract. *Napier* v. *Trimmier,* 56 Ga., 300; *Frost* v. *Tarr,* 53 Ind., 390; *Lee* v. *Carter,* 52 Ind., 342; *Bell* v. *Hewitt,* 24 Ind., 280.; *Baker* v. *Syfritt,* 147 Iowa, 49, 125 N. W., 998; *McGuire* v. *McGuire,* 11 Bush (Ky.), 142; *Freel* v. *Freel,* 7 Ky. Law Rep., 288; *Jenkins* v. *Stetson,* 9 Allen (Mass.). 128; *Sword* v. *Keith,* 31 Mich., 247; *Clark* v. *Cordry,* 69 Mo. App., 6; *Cullen* v. *Woolverton,* 65 N. J. Law, 279, 47 Atl., 626; *Van Horn* v. *Demarest,* 76 N. J. Eq., 386, 77 Atl., 354; *Andrews* v. *Brewster,* 124 N. Y., 433, 26 N. E., 1024; *Whitcomb* v. *Whitcomb,* 92 Hun, 443, 36 N. Y. Supp., 607; *Sherman* v. *Scott,* 27 Hun (N. Y.), 331; *Burgess* v. *Burgess,* 109 Pa., 312, 1 Atl., 167; *Cottrell's Estate,* 11 Phila. (Pa.), 92.

By the grace of the law a man is allowed to control the disposition of property after his death and to do many other things by will. He is thus allowed to project his individuality, his grasp, and his desires, beyond the grave, and make them effective. If by will he breaches his contract, this executor and his estate are made to respond. If by will he commits a tort there seems to be no good reason why his executor and his estate should not likewise be held accountable. With the maxim, "*Actio personalis moritur cum persona,*" out of the way, there is no good reason, and we have seen that this maxim does not touch this case.

If relief be denied to this plaintiff in this suit, she is indeed in bad plight. There is no other way in which she may vindicate the virtue and integrity of her mother and establish for herself the position in so-

ciety which she is entitled to occupy. If relief be denied to her, she, during her lifetime, and her children for generations, must bear the reproach of the bar sinister. It cannot be said that the law affords no remedy for a wrong such as the one perpetrated by this testator.

The maxim relied on by the executor has no application to the facts of this case, nor does any other principle of the law to which our attention has been called stand in the way of plaintiff's recovery.

The exception of suits founded on wrongs against the character from the statutory provision against abatement by death is no bar to plaintiff's action, because the statute relates to suits "commenced" during the life of the party deceased. Shannon's Code, 4569.

Other matters arising in the case are fully considered in the opinion of the court of civil appeals, and the judgment of that court is here affirmed, and the cause remanded for further proceedings.