In the Matter of the Estate of MELANIE DRASKE, Deceased.

Surrogate's Court, Kings County, September 29, 1936.

*John L. Class*, attorney *pro se*, as executor and petitioner.

WINGATE, S.    The present proceeding propounds the problem as to the extent of the obligation of the court to compel and participate in the publication and perpetuation of defamatory and presumptively libelous testamentary statements.

The decedent died on April 14, 1936, leaving a document, admittedly duly executed as a will, dated December 14, 1933. In its fourth item, after making certain bequests and a devise to a named beneficiary, it recited that the testatrix gave the indicated beneficiary " no further interest in my estate, for the reason that," then follows a four-line categorical statement, which, if published in writing by the testatrix during her lifetime, would unquestionably have furnished grounds for an action for libel by the person to whom reference is made, as exposing him to hatred, ridicule and contempt.    (*Dooley* v. *Press Pub. Co.*, 170 App. Div. 492, 493; affd., 224 N. Y. 640; *More* v. *Bennett*, 48 id. 472, 477.)

The named executor, as was his unquestionable duty, has propounded this will for probate, but has added to the usual prayer of his petition a request " that the objectionable matter contained in Par. 4 thereof be excluded from the context of the will as admitted to probate and recorded, as requested in the duly verified consent and request of all those interested in this estate, herewith submitted."

Appended to the petition are duly executed waivers and consents to probate of all of the statutory distributees of the decedent, and also a formal document duly executed and acknowledged by all, in which they " stipulate, consent and agree, and request the Court " to exclude from probate and record the defamatory language specified, on the ground that it " is neither dispositive nor an essential testamentary provision."

The due execution of the testamentary document as required by law, and the capacity and volition of the testatrix at the time of execution, have been fully demonstrated without question or controversy, wherefore, the will is entitled to probate, the only question being as to what must be so admitted and recorded for all time in the public archives of the court. Such record, when made, must inevitably be inspected from time to time in perpetuity, since the title to real estate is involved in the testamentary disposition.

Research indicates that the question of the authority of a court to exclude from probate or record portions of a duly authenticated testamentary document, has been made the direct subject of reported adjudication on only eleven occasions in the entire experience of the common law of the United States and the mother country, eight of these cases being found in the English reports, and three in those of the State of New York. There are also three decisions respectively in Pennsylvania, Tennessee and Georgia, which are pertinent in a general consideration of the subject, on the related subject of a right of action against an estate for testamentary libel.

That other instances of a display of a similar mental perversion have made their appearance from time to time is probable, not only by reason of the innate vagaries of human nature, but in consequence of the persistent tradition in probate courts, which is noted in *Matter of Gallagher* (10 Pa. Dist. Ct. 733, at p. 737), and is otherwise familiar to this court, of the act of a seventeenth century roué in bequeathing a legacy of £50,000 to a certain noble lady who had spurned his advances, in stated appreciation of her kindness as his mistress, which bequest he promptly revoked by codicil. What action the victim or court took in regard to this outrage on decency is shrouded in the mists of antiquity, but the mere fact of the existence of the tradition raises an inference that the perpetration and perpetuation of the libel were unrestrained by judicial action.

The earliest reported case which the research of the court has disclosed is *Curtis* v. *Curtis* (3 Add. 33), decided by Sir JOHN NICHOLL at *nisi prius* in 1825. In that case the will read: " I leave all property, of every kind, to my sister Mary, *in consequence of the cruel and murderous conduct of my wife, in this illness, as well as in past instances.*"

In the course of a probate contest by the wife on the ground of the testator's insanity, her representative moved to strike out the words other than the gift to the sister, agreeing to withdraw the contest in the event of the deletion of the defamatory statement.

The report (at p. 34) records the judicial disposition of the application as follows: " The court said that, not having authority to strike out or expunge any part of a will written by a testator, *propria manu*, upon a mere verbal application like the present, it was compelled, unwillingly, to withhold its assent to the proposition, now made on the part of the wife. It remembered that a similar application on the part of a nobleman, whose wife had made serious reflections upon him in her will, had been rejected by its predecessor, Sir WILLIAM WYNNE, on similar grounds; although in that, as in the present case, all parties were consenting."

Twenty-one years later, however, Sir HERBERT JENNER FUST in *Goods of Wartnaby* (1 Rob. Ecc. 423, 424) granted a motion to permit a passage of a will to be omitted in the probate copy as containing " a purely voluntary, and atrocious libel, on a mere stranger, unconnected with the testamentary disposition of the deceased."

Similar action on a like application is recorded in 1860 in *Marsh* v. *Marsh* (1 Sw. & Tr. 528) in which it is recorded (at p. 536): " The court expressed a doubt whether the words were of such a character as to warrant the application, and suggested that it might lead to inconvenience as a precedent: but, on consent of counsel for the plaintiffs, made the order as prayed."

In 1871, Lord PENZANCE in *Goods of Honywood* (L. R. 2 P. & D. 251), although affirming the power of the court in this regard, denied a similar application in the following words: " The whole thing is objectionable, for the probate professes to be a true copy of the will. How, then, can I order any part of the will to be omitted from it? After the cases cited it would be too strong to say that I have no power to do so; but it is a power to be exercised with great moderation, and in cases of a definite character. In the paragraph objected to there is nothing but a strong expression on the part of the testator that in a certain suit his adversary was wrong, and he was right. It is not likely that any one will feel hurt at the angry expressions of a disappointed litigant. It would be a great misfortune if the Court on light grounds should interfere in such a matter, and put before the world under its seal a document professing to be, but actually not, a true copy of the will."

The four remaining English cases are comparatively recent and all granted the relief sought. The will in *Goods of White* (111 L. T. R. 413), decided in 1914, contained defamatory matter concerning the testator's wife. The opinion of Judge BARGRAVE DEAN reads (at p. 414): " My own personal view is that a will ought not to be made the medium of slanderous and libellous state-

ments. People had better know that they must not put such things into wills in order to gratify private spite. In this case, having regard to the conflict of the only four cases that appear to be reported on this point, my view is that the words complained of are not in any way testamentary and are clearly libellous. The words will be omitted from the probate."

In *Estate of Heywood* (114 L. T. R. 375), decided in 1915, the question adjudicated concerned the probate as° a will of a letter from a soldier at the front, which, in addition to dispositive directions, contained statements which the government deemed of military importance and which, it was urged, should not be made public. The ruling of the court was that " Only that portion of the letter which is testamentary will be retained and admitted to probate, together with such other words and figures, including the date, as will render it intelligible."

In *Estate of Caie* (43 T. L. R. 697), decided in 1927, the court directed that certain " highly defamatory words " be " omitted from probate " although refusing to delete certain exhortations to the testator's children of which the widow did not approve.

Finally, in *Matter of Maxwell* (140 L. T. R. 471), decided in 1929, the disposition of a motion for deletion of defamatory words in a will, read:

" In granting probate the court has control of the document and anyone can be restrained by injunction from publishing offensive words in it.

" I do not see my way to expunge these words from the will itself, but they will be omitted from probate."

The earliest American authority on the subject which has been discovered is the opinion of Surrogate ABBOTT of Kings county in *Matter of Bomar* (18 N. Y. Supp. 214, not otherwise reported). There the special guardian for an infant objected to the probate of a clause in the will as " superfluous and libelous," which expressly excluded an individual from participation in the estate by reason of alleged illegitimacy. The opinion notes that on the hearing the legitimacy was admitted by the proponents " in the broadest and fullest manner." The court ruled that " as this item contains no testamentary disposition, and is not a necessary or operative part of the will, but simply casts an unwarranted slur upon an innocent child, it should be refused probate and record."

It further observes (at p. 215): " A will is an instrument which disposes of one's property, to take effect after death, and should not be permitted to be made a vehicle for libel or contumely; and, when such design plainly appears from the context, such matter, in so far as it is not dispositive, should be refused probate and

record. The same reasoning would apply to the opprobrious designation of a beneficiary in a will. A beneficiary ought not to be compelled to take a legacy *cum onere*. The opprobrious designation should not be probated or recorded; the dispositive words only should be admitted."

In *Matter of Meyer* (72 Misc. 566) former Surrogate FOWLER of New York county denied an application of this nature on the ground that (at p. 572) " as the matter complained of by respondent on this motion before me is not in my judgment grave enough to be harmful to respondent, I prefer not to exercise the power invoked, even if I possess it." It may be noted parenthetically, that in spite of this pronouncement the learned jurist was loath to insert the alleged defamatory words in his opinion, substituting asterisks in their place.

In his previous discussion in this case the surrogate appears to have been oppressed, as in many others of his utterances, with the limited jurisdiction of the court. Since, however, this decision was rendered in 1911, the action of the Legislature in 1914 (Laws of 1914, chap. 443) in concentrating jurisdiction over decedents' estates in Surrogates' Courts (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 72), would seem to have rendered his observations in this connection presently archaic. This is further emphasized by the fact that in 1926, his successor, Surrogate FOLEY, in granting similar relief (*Matter of Speiden*, 128 Misc. 899) observed (at p. 900):

" I hold further that the specific clause objected to by the contestants may be excluded from the context of the will as admitted to probate and as set forth in the decree herein on the ground that it is not dispositive or an essential testamentary provision. It is clear that the surrogate possesses complete power to exclude objectionable matter contained in a testamentary script from the form of the last will as admitted to probate and as recorded in the records of the Surrogate's Court. * * * This is particularly so where the omission of the improper matter does not change the legal effect of the paper or constitute an operative portion of the instrument. Only by the exercise of such power may the publication of a post mortem libel or the recording of indecent or offensive language written by a testator or by the draftsman of the will be denied judicial recognition. The proper procedure for this relief as outlined in the foregoing authorities is not by filing objections to the probate, but by a motion made in the probate proceeding to preclude the recording of the objectionable matter.

" Submit order on notice accordingly and submit decree on notice setting forth in full the form of the various instruments to be admitted to probate with the exception of the clause objected to."

Whereas the tenor of the decisions hereinbefore reviewed is substantially unanimous to the effect that not only is there no compulsion upon a court to admit to probate defamatory statements possessing no dispositive value, but, on the contrary, it is its duty to delete them from the papers to be recorded, it will be observed that in no single instance has such a determination been made by a court of appellate jurisdiction. For this reason these precedents are of persuasive value only, so far as this court is presently concerned (*People ex rel. Rice* v. *Graves*, 242 App. Div. 128, 135; *Matter of Watson*, 86 Misc. 588, 598, 599; affd., 165 App. Div. 252; revd. on other grounds, 215 N. Y. 209; *Matter of Kathan*, 141 N. Y. Supp. 705, 712, not otherwise reported), and the basic underlying considerations will be reviewed *de novo*.

The persons or groups of persons potentially interested in the question are four in number and consist of the testator, the person at whom the defamatory statements are directed, the persons entitled to share in the assets of the estate, and the court itself, and the rights and obligations of each, so far as presently pertinent, will be reviewed as briefly as possible.

Under the system of law and procedure in vogue in common-law jurisdictions, the testator possesses and may exercise the right to direct the distribution of his net estate to any person or persons of his choice, subject only to the limiting conditions which may be imposed by the jurisdiction, the laws of which effect the devolution. (*Matter of Watson*, 262 N. Y. 284, 293, 294; *Matter of Sidman*, 154 Misc. 675, 676; *Matter of Forte*, 149 id. 327, 328; *Matter of Larney*, 148 id. 871, 877; *Matter of Johnson*, Id. 738, 739, 740; *Matter of Mihlman*, 140 id. 535, 538.) The effectuation of the legal wishes of a testator is unquestionably the most cogent consideration motivating the actions of courts of probate jurisdiction. (*Matter of Kennedy*, 149 Misc. 188, 189; *Matter of Loomis*, Id. 417; *Matter of Farkouh*, 134 id. 285, 286.) This applies, however, merely to affirmative gifts, mere expressions of negative desire, such as directions for exclusion from benefit of indicated individuals, being legally nugatory. (*Haxtun* v. *Corse*, 2 Barb. Ch. 506, 521; *Gallagher* v. *Crooks*, 132 N. Y. 338, 342; *Pomroy* v. *Hincks*, 180 id. 73, 75; *Matter of Trumble*, 199 id. 454, 465; *Matter of Weissmann*, 137 Misc. 113, 116; affd. on opinion of this court, 232 App. Div. 698.)

Consonant with this conception that the basic right of testamentary disposition concerns merely affirmative donative directions, it is well established that expressions in the will of a competent testator concerning the reasons or motives for a given devise or bequest are wholly immaterial. (*Clapp* v. *Fullerton*, 34 N. Y. 190,

197; *Matter of White*, 121 id. 406, 414; *Thompson* v. *Thompson*, 21 Barb. 107, 114; *Matter of Bedlow*, 67 Hun, 408, 414; *Matter of O'Dea*, 84 id. 591, 593; *Matter of Bethune*, 15 N. Y. St. Repr. 294, 296; reported by memorandum only, 48 Hun, 614; *Matter of Tracy*, 11 N. Y. St. Repr. 103, 105; reported by memorandum only, 46 Hun, 675; *Boell* v. *Schwartz*, 4 Bradf. 12; *Thompson* v. *Quimby*, 2 id. 449, 509; *Matter of Lang*, 9 Misc. 521, 522; *Matter of Shumway*, 138 id. 429, 435.) They will not modify an otherwise clearly expressed donative intent, nor supply one which is otherwise absent.

It follows as a logical sequence that a testator, as a purely legal matter, possesses no basic right to require from the administrators of the law the recognition or perpetuation of any expression of wish or feeling which is not directly relevant to an affirmative disposition of a portion of the assets belonging to him. This statement, of course, includes the persons by whom he desires his estate to be administered, and the rules which are to guide their conduct. The inclusion in the will of anything in excess of such directions is pure surplusage possessing no claim to judicial protection or perpetuation.

The fact that the insertion of superfluous language is in most instances innocuous cannot alter the basic principle that the only inherent legal right of the testator is, in so far as not restricted by positive rules of law, merely to make bald and categorical directions, respecting the administration and affirmative disposal of his property.

The obligation of the court to further this dispositive intent has been noted, and it has frequently been determined that where such intent is clearly demonstrated, ample judicial power exists for the excision of provisions of the will which would be subversive thereof. (*Matter of Buechner*, 226 N. Y. 440, 443; *Adams* v. *Massey*, 184 id. 62, 69; *Van Nostrand* v. *Moore*, 52 id. 12, 20; *Matter of Bates*, 152 Misc. 627, 629; *Matter of Crespi*, 158 id. 383, 387.) Whereas the " excision " contemplated in these pronouncements is a disregarding of language rather than its physical excision from the instrument itself, it would seem that the difference was rather one of degree than of kind, and that where essential for the effectuation of the testamentary intent, the authority for the former should be broad enough to include the latter.

In any will, the primary desire of the testator is obviously to benefit the beneficiaries whom he has designated as the recipients of his bounty. The act of a court, therefore, in preventing the diversion of a substantial part the estate assets to others would uncontrovertibly be a furtherance of the testamentary wish. It is at this point at which the noted determinations adjudicating the

liability of an estate for testamentary libel become pertinent. Whereas not numerous, they are uniform and well reasoned in their determination that an estate may be held liable for the publication of a libel inserted in a will. (*Matter of Gallagher*, 10 Pa. Dist. Ct. 733, 737; *Harris* v. *Nashville Trust Co.*, 128 Tenn. 573, 585; 162 S. W. 584; *Hendricks* v. *Citizens & Southern Nat. Bank*, 43 Ga. App. 408, 413; 158 S. E. 915.) The prevention of such a diversion of assets to the defamed person is, therefore, in furtherance both of the basic testamentary intent and of the advantage of the beneficiaries named in the will.

That the prevention of publication of the libel is in the interest of the person attacked needs no thesis for its demonstration. Although damages may be awarded at his suit, the wrong can never be completely repaired. " Good name in man or woman * * * is the immediate jewel of their souls. Who steals my purse, steals trash; * * * but he that filches from me my good name robs me of that which not enriches him and makes me poor indeed." (Othello, act III, sc. 3.)

The final aspect of the subject for consideration concerns the duty of the court itself as defined in the Surrogate's Court Act. Section 144 provides in substance that if the surrogate is satisfied respecting the volition of the testator and the due execution of the will, " it must be admitted to probate * * * and must be recorded accordingly." Section 150 directs that " every will admitted to probate * * * shall be recorded in the proper Surrogate's Court. Where a written will is proved, it must be filed and remain in the surrogate's office," except under specified conditions here absent.

Even though it might be deemed that a physical excision of a defamatory expression on probate, as hereinbefore considered, would amount to an unwarrantable extension of the authority of the court in this connection, it would seem that substantial compliance with the spirit of the statutory directions noted might be accorded even though the obnoxious language were to be eliminated from probate and record, by adopting the definition of " will " hereinbefore indicated, as the affirmative expression of intent of the testator respecting the administration and disposition of his material possessions upon his death. This is, in substance, the historic definition given by Bacon (5 Bac. Abr. [5th ed.] tit. " Of Wills and Testaments (A)," p. 497) which has been reiterated on innumerable occasions. That it represents the established law of the State of New York seems obvious from the cases construing the effect of section 21 of the Decedent Estate Law, which provide that matter of a testamentary nature following the signatures of the testator

and the witnesses, will void the instrument, whereas the addition of matter which is unimportant and immaterial in this regard will not produce such an effect. (*Tonnele* v. *Hall*, 4 N. Y. 140; *Matter of Gibson*, 128 App. Div. 769, 772; appeal dismissed, 195 N. Y. 466; *Matter of Serveira*, 205 App. Div. 686, 690; *Matter of Crosson*, 134 Misc. 154, 155; *Matter of Tyner*, 138 id. 192, 193. Cf. *Matter of O' Neil*, 91 N. Y. 516, 524.)

The basis of the decisions upholding testamentary documents in which immaterial, unimportant and non-dispositive matters follow the signatures, is that such expressions are not, in reality, parts of the will, wherefore their addition subsequent to the signatures does not infringe the statutory requirement for subscription " at the end of the will." If, however, non-dispositive directions are not a part of the will, this must logically be the case no matter in what part of the testamentary paper they are found. If not properly a part of the will, their probate and record are unnecessary under sections 144 and 150 of the Surrogate's Court Act, and in cases where positive injury may result from their probate and record, they should be eliminated. In the case at bar such a situation exists, wherefore the prayer of the petition in this regard will be granted.

In accordance with the similar direction of Surrogate FOLEY in *Matter of Speiden,* the proponent will submit an order on notice in conformity herewith, and will further submit a decree on notice setting forth in full the form of the will to be admitted to probate, which will omit the words in the third paragraph of the fourth item following the word " Estate."