ETHEL BROWN, Plaintiff, *v.* CHRISTOPHER F. MACK, Individually, and as Executor of CHRISTOPHER W. BROWN, Deceased, Defendants.

Supreme Court, Special Term, Kings County, July 10, 1945.

*Edwin C. Morsch* for defendants.

*Frederick Hamisch* for plaintiff.

WALSH, J. Defendants move, pursuant to subdivision 5 of rule 106 of the Rules of Civil Practice, to dismiss the complaint in this libel action on the ground that it does not state facts sufficient to constitute a cause of action.

The alleged libel was published in the will of Christopher W. Brown, the deceased husband of the plaintiff. The defendants are Christopher F. Mack, as executor of the last will and testament of Christopher W. Brown, deceased, and Christopher F. Mack, individually. The following facts, admitted to be true for the purposes of this motion, are alleged in the complaint:

The plaintiff and her husband were married in 1915. In 1919 the husband instituted an action in this State for absolute divorce. His wife, the plaintiff herein, counterclaimed for and was granted a separation. On August 25, 1930, the husband made a will. He died July 7, 1944. His will was duly admitted to probate in the Kings County Surrogate's Court on November 27, 1944, and letters testamentary were issued to defendant Christopher F. Mack.

The will contained the following provision: " My reason for not making a special bequest or devise to Ethel Brown, unfortunately my wife, is that [then follows matter which is libelous per se], and that she is provided for by dower rights in and to my real estate. I have never lived with this woman and so it is my desire that she does not participate in the distribution of my estate beyond her dower rights."

The complaint alleges that said matter was wholly false and the said Christopher W. Brown was actuated by malice and the intention of defaming the character and reputation of the plaintiff and made said will with the intention that the same be probated.

The complaint contains three causes of action. The first is against the estate of plaintiff's husband, Christopher W. Brown. The second is against Christopher F. Mack, individually, and alleges " that the publication of the matter contained in said will by the defendant, Christopher F. Mack, was wanton and

careless ''. The third cause of action is also against Christopher F. Mack, individually, and contains the further allegation: '' Upon information and belief, that subsequent to July 7, 1944, the defendant sent or delivered to, or caused to be sent or delivered to, the various legatees named in the aforesaid will of the testator, copies of the will of said testator containing the matter hereinbefore referred to ''; further, that such publication was wanton and careless.

Both attorneys concede that the precise questions involved in this action, that is, the liability of an estate and the individual liability of the person acting as executor, are unusual and entirely novel in the State of New York. They have not been able to submit any reported case in this State in point. Reference has been made to the question by surrogates of three counties in cases hereinafter cited.

The defendants contend that the alleged cause of action which may have existed against the. decedent during his lifetime abated with his death; that regardless of any abatement the cause of action which existed against the decedent is barred by the Statute of Limitations; that the publication of the alleged libelous words in the decedent's will was privileged; and that the acts of the defendants in offering the will for probate and in giving copies of the will to the legatees were also privileged.

For the reasons hereinafter given, the court holds that the complaint states a cause of action against the estate of the testator but does not state a cause of action against Christopher F. Mack, individually.

It is asserted by defendant in support of that phase of the motion addressed to the first cause of action that the maxim, *actio personalis moritur cum persona* still applies to libel actions in this State and that section 118 of the Decedent Estate Law '' was enacted to correct certain injustices which existed in the law with relation to personal injury actions in the common meaning and understanding of such actions '', and has reference only to such type of actions. There is nothing in the statute to give it such a restricted application and, in fact, the report of the Law Revision Commission which drafted and submitted the proposed statute to the Legislature shows precisely the contrary. (See 1935 Report of N. Y. Law Revision Commission, p. 159 *et seq.;* more particularly see such report at pp. 161, 162.) This document indicates a legislative intent to have the statute apply to all torts except claims for breach of promise to marry, seduction, criminal conversation and alienation of affections — all of which were outlawed altogether in

this State by the Legislature at the same session at which it adopted the aforesaid legislation (Civ. Prac. Act, §§ 61-a–61-i). Any doubt as to a legislative purpose that the death of a person responsible for the wrongful act should not terminate the liability therefor of his estate is dispelled by the "clarifying" amendment to the statute passed in 1942 (ch. 314). (See 1942 Report of N. Y. Law Revision Commission, p. 777, Note, to such effect.)

In the event that his contention in the foregoing respect be not sustained, defendant further argues that the Statute of Limitations (Civ. Prac. Act, § 51, subd. 3) effectively bars the action, more than one year having elapsed between the testator's death and the comencement of the action. Such argument could have weight only if the injury accrued at the time of the execution of the will. (See Civ. Prac. Act, § 11.) Obviously, it did not. Plaintiff disavows such claim and a study of the complaint supports that view. No publication through the medium of dictation of the will to a stenographer is asserted and the complaint language, " signed, published and declared ", plainly refers to the usual " publication " of a will to witnesses by the customary declarations of the testator, without divulging the contents thereof. Any other interpretation would be ineffective as legally conclusory and nonfactual. Actionable wrong herein, if any, was effected by the act of publication in connection with the proceedings for probate. At that time, of course, the testator, author of the asserted libel, was dead.

Publication being an essential element of this tort, which is for damages to reputation (Seelman on Law of Libel and Slander, p. 115), there is presented the inquiry whether responsibility could be borne by the wrongdoer for a publication posthumously made.

As already indicated, the matter in the will complained of is libelous per se. It was written by the testator fourteen years before his death as part of his last will and testament, allegedly with the intention and the knowledge that after his death his statement would be published. The testator composed the libel. He selected a means of almost certain publication and during the subsequent fourteen years he did not revoke or modify the will. Responsibility for publication in libel actions, it is well established, may be inferred from the setting in motion of the procedure designed to achieve such result, if the result actually follows. Thus, the author of a libel who delivers it to a printer is responsible, as is the printer himself, " when possession of the printed matter is delivered with the

expectation that it will be read by some third person, provided that result actually follows ". (*Youmans* v. *Smith,* 153 N. Y. 214, 218.) Likewise, one who gives a libelous statement to a newspaper reporter, with the knowledge reasonably to be inferred that the interview will be given printed circulation, is liable in an action for damages. (*Roberts* v. *Breckon,* 31 App. Div. 431; *Valentine* v. *Gonzalez,* 190 App. Div. 490.) "Every one who requests, procures or commands another to publish a libel is answerable as though he published it himself. And such request need not be expressed, but may be inferred from the defendant's conduct in sending his manuscript to the editor of a magazine, or making a statement to the reporter of a newspaper, with the knowledge that they will be sure to publish it, and without any effort to restrain their doing so. And it is not necessary that defendant's communication be inserted verbatim, so long as the sense and substance of it appear in print." (Newell on Slander and Libel [4th ed.], § 193.) And again (§ 176): "It is not necessary that the publication of a libel should be effected solely or directly by the author of it personally. For if a person having printed or written a defamatory statement parts with it in order that its contents may become known * * * [it] will amount to a publication * * *." "All who take part in the procurement, composition and publication of a libel are responsible in law and equally so." (Seelman on Law of Libel and Slander, p. 126. See, also, 17 R. C. L., Libel and Slander, § 138, p. 386.)

Many analogous tort situations could be found. For instance, where one sets a trap or a slow fuse to harm another, and later dies and, subsequently, the victim is injured, the person who sets the trap or the fuse is liable. One who hires another to commit an assault, which is not accomplished until after the death of the instigator, is liable for the assault. Joint and concurrent wrongdoers are liable.

"The question of privilege is not so easily disposed of, not because the law relating to the subject is unsettled, but because its application to a novel state of facts is somewhat difficult." (*Youmans* v. *Smith,* 153 N. Y. 214, 219, *supra.*)

The law recognizes the defense of privilege in a libel action. There are two kinds of privilege, absolute and qualified or conditional privilege. Only absolute privilege can be considered here. As hereinafter indicated, the defense of privilege should be set up by answer, but there are exceptions for absolute privilege. "The interest of society requires that whenever men seek the aid of courts of justice, either to assert or to

defend rights, of person, property or liberty, speech and writing therein must be untrammelled and free. The good of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in a legal proceeding publishes a libel, not because it wishes to encourage libel, but because if men were afraid to set forth their rights in legal proceedings for fear of liability to libel suits greater harm would result, in the suppression of the truth. The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a *right* to speak and to write; subject only to one limitation, that what is said or written bears upon the subject of litigation, that is, is pertinent, relevant, germane thereto." (Seelman on Law of Libel and Slander, p. 161.)

In *Youmans* v. *Smith* (*supra*, p. 219), the court stated: " The law governing the privilege of parties and their counsel, so far as applicable to the case in hand, was well stated by Judge GROVER in *Marsh* v. *Ellsworth et al.* (50 N. Y. 309, 311), as follows: ' A counsel, or party conducting judicial proceedings, is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; * * * within such limit, the protection is complete, irrespective of the motive with which they are used; but such privilege does not extend to matter, having no materiality or pertinency to such questions.' " Determination of what constitutes privilege is for the court in the first instance. (*Mattice* v. *Wilcox,* 147 N. Y. 624, 636.)

Pertinency has been defined as " such matters as are relevant and material to the litigation " (*Moore* v. *M. N. Bank et al.,* 123 N. Y. 420, 426). " Materiality " as a component of or a synonym for " pertinency " is stressed also in *Gilbert* v. *The People* (1 Denio 41), *Marsh* v. *Ellsworth et al.* (50 N. Y. 309, 311, *supra*), *Youmans* v. *Smith* (153 N. Y. 214, 219, *supra*) and *Moore* v. *M. N. Bank et al.* (*supra*).

To what extent is the defense of privilege in judicial proceedings available to the defendants herein? The two defendants shall be separately considered.

The will of the testator herein was not made in a judicial proceeding. It was an instrument to pass title to property and more likely to become the subject of judicial proceeding than a deed or bill of sale. Eventually, to be effective it had to be probated. However, the testator was not a party to a judicial proceeding when he drew the will. He was not a party to the

probate proceeding which followed his death. (*Moore* v. *M. N. Bank et al., supra.*)

A testator may properly give the reasons for disinheriting the natural objects of his bounty. Though such provisions are neither necessary nor dispositive, they are frequently important in a probate proceeding. However, justice and public policy suggest that the testator should not have a shield of privilege. If the libelous criticism of his distributees is true, his estate has the defense of justification. He composed the alleged libel and in justice his estate should bear the burden of defending it.

Only three reported cases have been found in other jurisdictions.

In *Harris* v. *Trust Co.* (128 Tenn. 573), a codicil to the will contained the following (p. 576) : " And this sum of two hundred and fifty (250) dollars to John Woodfin, $1 to William Woodfin, and $1 to Cleo Woodfin, the illegitimate children of my brother James Woodfin, is all that they are ever to have of my estate." Cleo Woodfin Harris sued the estate. The defendant moved to dismiss. The trial court treated the motion as a demurrer and sustained it. The Court of Civil Appeals reversed. The Supreme Court, affirming this reversal, said at page 577: " A tort has certainly been committed with respect to the rights of this plaintiff." And at page 578: " No more effective means of publishing and perpetuating a libel can be conceived than to secure the inscription of such matter on court records, as by probate of a will. The libel is not only permanently recorded, but in this case will be of widespread circulation for many years. This testator was the owner of considerable real estate, and every time a transfer of any of this property is made and an examination of the title necessitated, this will must be scrutinized, and the libel thus published will be called to the attention of parties interested. The stigma placed by testator upon this plaintiff and her descendants will be thus made conspicuous for years to come." The will in the instant case, it should be noted, makes reference to real property interests.

In *Hendricks* v. *Citizens & Nat. Bank* (43 Ga. App. 408), the testatrix used the words, " I do not recognize him as a grandson, a descendant of my blood." (The trial court had sustained a general demurrer, which was held error by the Court of Appeals. This was reversed on appeal [*sub nom. Citizens and Southern Bank* v. *Hendricks*, 176 Ga. 692] on the ground that liability for a personal tort, under the applicable law of that State, did not survive the death of the tort-feasor.) At page

413, the court said: " She knew when she executed her will that unless she took some measure to prevent it, the instrument would be presented for probate and record. That was the very purpose of its formal execution. The law presumes that one contemplates the natural consequences of his act, and upon that principle bases his legal responsibility."

In *Gallagher's Estate* (10 Pa. Dist. R. 733), the testator charged that an attorney at law owed him money for education and clothing, which he promised to pay and refused to pay. The court, in holding that the demurrer must be overruled, said at pages 736–737: " The alleged libel here differs in essential respects from libels of the common stamp. It was written in cold blood in contemplation of publication at a time when no action could be brought against the person of the wrongdoer, and in a public record which would be a perpetual reminder of the charge. If the charge had been of perjury, or theft, or trickery, it would readily be seen what fatal effects the charge would have had on petitioner's professional standing and business. A will was probated in the early part of the last century, in which the testator recites that he had ' directed two busts to be executed and placed in the court-house in Pittsburgh as legacies to two of the most unprincipled scoundrels who ever appeared before a court of justice.' The testator had a large estate, which was afterwards sub-divided into lots, was built up and now forms part of this city. In examining the title, this clause has probably been read hundreds of times, and all these years the objects of testator's hatred and their representatives have borne this gross imputation for which there may have been no justification." With reference to the question of privilege, the court said at page 737: " It has been suggested that the language used in the will is substantially that in actions at common law for the recovery of money, and therefore privileged; but the answer to this is that plaintiff there is in pursuit of a legal remedy, and defendant is afforded an opportunity to answer and is on equal terms with plaintiff; while, here, that opportunity was denied and petitioner makes that special averment of damages, which, under the authorities, gives him a right to be heard." (See, also, 36 C. J., Libel and Slander, § 184.)

The complaint should not be dismissed as to the defendant Christopher F. Mack, as executor of the last will and testament of Christopher W. Brown.

Although it is difficult to distinguish between the two defendants, the situation of defendant Christopher F. Mack individu-

ally is substantially different. As executor he was a necessary party to the probate proceeding. The subject of the proceeding was the will of the testator as he found it upon testator's death. Were the words in the objectionable paragraph pertinent and material *in the probate proceeding* to such an extent that the individual defendant may now invoke the defense of absolute privilege?

The will was executed on August 25, 1930, shortly before the effective date of the amendment to section 18 of the Decedent Estate Law, limiting drastically the right of one spouse to disinherit the other. Testator did not have to give a reason for cutting off his wife. On the other hand the provision in the will might have been inserted in contemplation of the new amendment. Under the amendment one spouse shall share in the estate of the other except as therein provided. It would appear to be almost necessary for one spouse to state the reason for not providing for the other, especially in cases of abandonment. However, it is natural and usual for a husband to provide for his wife in his will. It is also the common practice where a husband does not provide for his wife, to note that fact and frequently to give some reason for it. While his reason may not be necessary, pertinent or material for the disposition of his property, when it has been given it may be pertinent and material *in the proceedings for the probate of the will.* The clause may be pertinent, bearing on testamentary capacity or the lack of testamentary capacity, or to show the presence or the absence of undue influence. Assuming, in the instant case, that the plaintiff had been a dutiful wife and had lived in harmony with the testator until his death, and was disinherited, and the reasons given could be shown to be imaginary or fantastic, plaintiff could ask to have the provision considered as some evidence to prove that the testator was not of sound mind or had been the victim of fraud or undue influence. (*Curtis* v. *Curtis,* 3 Add. Ecc. 33, cited in *Matter of Draske,* 160 Misc. 587, 589.) Further, in this case, if the plaintiff had contested the will claiming lack of testamentary capacity or undue influence, the testator's reasons for disinheriting plaintiff stated in his will would be pertinent and material and admissible as part of the will on the trial.

The fact that one of the reasons given is libelous per se should not affect its admissibility (*Garr* v. *Seldon,* 4 N. Y. 91, 94), even though his estate must defend a libel action.

Actually, Christopher F. Mack, individually, was not a party to the probate proceeding and did nothing as an individual. Every act was that of an executor alone.

The defendant could have pursued one of five courses:

(1) He could have refrained from filing the will. But if it were in his possession, he could have been compelled to file it (Surrogate's Ct. Act, § 137). The will would then be a public record. The libel would have been published.

(2) He could have filed the will and renounced his right of appointment as executor. This would have been publication. Then some legatee, of right, would have petitioned for probate and the appointment of an administrator *c. t. a.* In a certain case the executor because of peculiar qualifications may be under a duty to act.

(3) He could have filed the will and petitioned to delete the defamatory provision. The will would be published, but the extent of publication reduced. However, legatees, fearing a contest, might have opposed the deletion. This is further discussed later.

(4) He could have filed the will and petitioned for its probate and his appointment, as he did, the common and usual procedure.

(5) He could have later refused to furnish copies of the will to the legatees. This would hardly have reduced publication, because they could have copied the will or obtained certified or uncertified copies of it from the clerk of the Surrogate's Court at small expense. The legatees would have been necessary parties to the probate if it were contested.

The distribution of copies of the will to interested parties was very similar to the distribution of printed questions containing libelous matter to prospective witnesses in a disbarment proceeding, which was held privileged. (*Youmans* v. *Smith,* 153 N. Y. 214, *supra.*)

The will could not have been probated without some publication. Logically, plaintiff must contend that the will should not be offered for probate in any event. That would have been the only way to avoid completely a publication of the alleged libel. To hold that the will should have been suppressed is, of course, untenable. A person who conceals a will shall be guilty of a felony. (Penal Law, § 2052.)

Plaintiff urges that it was the duty of the defendant to petition to have the defamatory matter deleted.

This subject has come before the courts of this State in five reported cases: *In Re Bomar* (18 N. Y. S. 214); *Matter of Mayer* (72 Misc. 566); *Matter of Speiden* (128 Misc. 899); *Matter of Payne* (160 Misc. 224); and *Matter of Draske* (160 Misc. 587).

The opinion in *Matter of Draske* (*supra*) indicates that Surrogate WINGATE made an exhaustive study of the cases. He

writes at page 589: " Research indicates that the question of the authority of a court to exclude from probate or record portions of a duly authenticated testamentary document, has been made the direct subject of reported adjudication on only eleven occasions in the entire experience of the common law of the United States and the mother country, eight of these cases being found in the English reports, and three in those of the State of New York. There are also three decisions respectively in Pennsylvania, Tennessee and Georgia, which are pertinent in a general consideration of the subject, on the related subject of a right of action against an estate for testamentary libel."

Following the majority of the cases, the Surrogate granted the petition for probate and the exclusion from the will of certain presumptively libelous matter.

However, in this and all the other reported cases there was no opposition to such exclusion. In most of the cases it appears that all parties joined in or did not oppose the application, and the validity of the will and the capacity of the testator were not disputed.

The court held that the only inherent right of a *testator* is to make bald and categorical directions respecting the administration and affirmative disposal of his property and anything in excess was pure surplusage.

On the other hand the court stated at page 588: " The named executor, as was his unquestionable duty, has propounded this will for probate * * *."

In *Matter of Payne (supra)* Surrogate Feely wrote at page 230: " There is no obligation on a nominated executor, or on any other representative of an estate, to accept the office as such, if it is to be incumbered with a personal liability to an action for libel appearing on the face of the will; but it would seem to be for the public good that the property of any decedent should be disposed of, at his death, in an orderly and lawful manner, despite his abusiveness; and that when a nominated executor in a libelous last will does accept office and publishes the will to the extent of presenting it for probate to a competent court for the sole purpose of having it executed after the court has eliminated those portions of it that are non-dispositive and defamatory, the petitioning executor should be, as a matter of public policy, absolutely privileged and protected from personal liability for filing the petition (See *Lesser* v. *International Trust Co.,* 175 App. Div. 12, and *People ex rel. Bensky* v. *Warden of the City Prison,* 258 N. Y. 55), especially

where he acted in good faith and without malice, because it is necessary for the court to consider the libelous portions of the will in order to eliminate them, at least to the extent of clearing the way for recording and effectuating any unobjectionable provisions remaining.''

The basis for liability of the individual defendant and the charge that he was wanton and reckless then would seem to be reduced to his failure to petition the court to exclude the defamatory matter. That is not, however, the gravamen of the second and third causes of action.

The plaintiff could have filed such a petition. She failed to do so probably because her attorney as well as the attorney for the executor did not know of the procedure, for which there is no statute and which has been reported in the Surrogates' Courts in this State in five instances but has never been passed upon by an appellate court. (*Matter of Draske, supra*, p. 593.)

The procedure is valuable and, for the reasons stated in the reported cases, most commendable.

However, the use of it would have merely reduced the extent of the publication of the libel; it would not have prevented the publication. It sustains the position that the executor was a party to a judicial proceeding and that only by a supplemental proceeding could the extent of the publication of the libel have been limited. In that supplemental proceeding the libelous matter would be definitely pertinent and material.

Except for the above reference by Surrogate FEELY to privilege, those cases do not refer to that defense. Nor do they refer to situations where one spouse for valid reasons wishes to deprive the other spouse of a right of election under section 18 of the Decedent Estate Law and to mention the reasons in his or her will.

*Matter of Payne* (*supra*) and *Matter of Draske* (*supra*) would seem to approve *Harris* v. *Trust Co.* (128 Tenn. 573, *supra*), wherein the estate was held liable but the executor was not held personally liable.

There is at present no disability of a spouse to maintain an action for a personal tort against the other. In chapter 669 of the Laws of 1937, effective September 1, 1937, the Legislature amended section 57 of the Domestic Relations Law, giving a married woman a right of action against her husband for a tortious act resulting in any personal injury to her, as defined by section 37-a of the General Construction Law. Section 37-a of the General Construction Law includes libel.

The court recognizes the established law under which an executor is personally responsible for his torts and cannot subject the estate in his hands to some new liability. (*Kirchner* v. *Muller,* 280 N. Y. 23; *Matter of Von Slooten* v. *Dodge,* 145 N. Y. 327.)

The libel was not the executor's tort, except as to the filing of the will in a judicial proceeding, a step which would have been taken by someone in any event. If plaintiff pressed personal liability of the executor to its logical conclusion, the estate would not be liable at all, a result she scarcely seeks. In filing and probating the will the executor as an individual was privileged.

The next question to determine is whether or not the defense of privilege must be taken by answer or whether it may be the basis for a motion to dismiss the complaint. The authorities justify a motion in this case. " It must be conceded that in this State it is the general rule that privilege in actions for libel is a matter of defense, and should be pleaded in order to be available. (*Stevenson* v. *Ward,* 48 App. Div. 291; *Stuart* v. *Press Publishing Co.,* 83 id. 467.)

" In most cases the fact of privilege is established by evidence other than what appears from the article complained of, and in such cases it is proper and necessary that the plaintiff should be advised of the claim of privilege by appropriate allegations of the answer setting up the facts upon which the claim of privilege is based, to the end that the plaintiff may be prepared to meet the defendant's evidence on the trial.

" Nevertheless, while the burden of proof rests upon the defendant claiming privilege to show the facts constituting the privilege, he may, notwithstanding, always, in order to discharge himself of that burden, take advantage of what is proved or established for him by his opponent. (18 Am. & Eng. Ency. of Law [2d ed.], 1045.)

" In the case under consideration the plaintiff sets forth in his complaint, in full, the notice of sale of which he complains, and the character and nature of the publication is made to fully appear by the plaintiff's own showing that it was a step in a legal proceeding to enforce a remedy given by law." (*Tierney* v. *Ruppert,* 150 App. Div. 863, 866–867.)

" Where the complaint upon its face gives all the necessary facts, the question of pertinency can be decided by the court thereon, and it is not necessary for defendant to interpose the defense."

"If the complaint shows on its face that the libelous words were material then a demurrer or motion will be proper." (Seelman on Law of Libel and Slander, p. 169, § 201; *Carr* v. *Selden*, 4 N. Y. 91; *Rosenberg* v. *Dworetsky*, 139 App. Div. 517; *Tierney* v. *Ruppert*, 150 App. Div. 863, *supra; Marsh* v. *Elsworth*, 1 Sweeny 52; *Magnus* v. *New*, 212 App. Div. 123. See, also, *Corwin* v. *Berkwitz*, 190 App. Div. 952; *Chapman* v. *Dick*, 197 App. Div. 551.)

In *Chapman* v. *Dick* (*supra*, p. 559), Mr. Justice YOUNG reviewed the cases and stated: "I think that under the above authorities the rule relating to absolute privilege is sufficiently broad to extend to all matter otherwise libelous alleged or introduced in an action which, although ineffectual as a defense, may by any possibility, under any circumstances, and at some stage of the proceeding be or become material or pertinent."

The motion to dismiss the complaint is denied as to the first cause of action and is granted as to the second and third causes of action. Submit order.